E. W. Stockton, d. b. a. Riverside Baking Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 101627.   Promulgated May 16, 1941.

*Everett H. Smith, Esq.*, for the petitioner.
*Sidney B. Gambill, Esq.*, for the respondent.

OPINION.

BLACK: The question in this proceeding is whether the respondent erred in determining that, under section 501 (a) (2) of the Revenue Act of 1936, petitioner was subject to an unjust enrichment tax equal to 80 percent of $3,841.55, representing reimbursements of Federal excise tax burdens received by petitioner during the calendar year 1936 from two of his vendors, which reimbursements had been included in prices paid by petitioner to such vendors during the taxable year 1935. The provisions of section 501 (a) (2) are set forth in our opening statement. Section 501 (d) provides:

(d) The net income from reimbursement * * * specified in subsection (a) (2) * * * shall be computed as follows: From the total payment or accrual (1) of reimbursement to the taxpayer from vendors for amounts representing Federal excise tax burdens included in prices paid by the taxpayer to such vendors * * * there shall be deducted the expenses and fees reasonably incurred in obtaining such reimbursement * * *.

There were no expenses or fees incurred in obtaining the reimbursements in question and petitioner concedes that the "net income" referred to in section 501 (a) (2) is the total amount of the reimbursements, namely, $3,841.55. This net income is taxable at 80 percent "to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person [petitioner] in turn shifted to his vendees."

The respondent determined that petitioner shifted all of the Federal excise taxes in question to his vendees. Petitioner contends that the burden of such taxes was borne by him and that he did not shift any of them to others. This presents an issue of fact, the burden of proof of which is upon petitioner. *Arden-Rayshine Co.*, 43 B. T. A. 314; *Sophie Jaski*, 43 B. T. A. 321; *Binghamton Candy Co.*, 43 B. T. A. 327.

Petitioner offered no evidence relative to the Federal excise tax involved in the reimbursement of $9.70 from the Corn Products Sales Co. We, therefore, approve the respondent's determination as to this reimbursement and hold that petitioner is liable for an unjust enrichment tax equal to 80 percent of the net income from such reimbursement.

The Federal excise tax involved in the reimbursement of $3,831.85 from the Sperry Flour Co. is a processing tax on flour equal to $1.38 per barrel of flour. Petitioner's vendors passed this tax of $1.38 per barrel on to petitioner as a separate additional cost of the flour which petitioner manufactured into bakery products and sold during the taxable year 1935. The question is whether petitioner in turn passed the tax on to his vendees.

Additional provisions of section 501 of the Revenue Act of 1936 are as follows:

(e) For the purposes of subsection (a) (1), (2), and (3), the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows:

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(2) If the taxpayer so elects by filing his return on such basis, from the aggregate selling price of all articles with respect to which such Federal excise tax was imposed and which were sold by him during the taxable year (computed without deduction of reimbursement to purchasers with respect to such Federal excise tax) there shall be deducted the aggregate cost of such articles, and the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise tax was imposed. The excess of such margin per unit over the average margin (computed for the same unit) shall be multiplied by the number of such units represented by the articles with respect to which the computation is being made; \* \* \*

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(f) As used in this section—

(1) The term "margin" means the difference between the selling price of articles and the cost thereof, and the term "average margin" means the average difference between the selling price and the cost of similar articles sold by the taxpayer during his six taxable years preceding the initial imposition of the Federal excise tax in question, \* \* \*

(2) The term "cost" means, in the case of articles manufactured or produced by the taxpayer, the cost to the taxpayer of materials entering into the articles; or, in the case of articles purchased by the taxpayer for resale, the price paid by him for such articles (reduced in both cases by the amount for which he is reimbursed by his vendor).

(3) The term "selling price" means selling price minus \* \* \*.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the Federal excise tax. Such proof may include, but shall not be limited to:

(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or materials, or (B) in costs of production. If the taxpayer asserts that the burden of the tax was borne by him while the burden of any other increased cost was shifted to others, the Commissioner shall determine, from the respective effective dates of the tax and of the other increase in cost as compared with the date of the change in margin, and from the general experience of the industry, whether the tax or the increase in other cost was shifted to others. If the Commissioner determines that the change in margin was due in part to the tax and in part to the increase in other cost, he shall apportion the change in margin between them.

Petitioner and the respondent have agreed, in an exhibit which is a part of the record, that under the computation provided for in section 501 (e) (2) the "margin per unit" for the taxable year 1935 [2] was $1.44

---

[2] The year 1935 is used for the reason that it was during 1935 that the articles were sold with respect to which the reimbursement was received. See instruction No. 3, under schedule C–3, method II, Form 945, entitled "Return of Tax on Unjust Enrichment."

in excess of the "average margin (computed for the same unit)" for the base period preceding the initial imposition of the Federal excise tax in question. The details of computation are shown in the findings of fact.

Since $1.44 is in excess of the Federal excise tax in question of $1.38 per barrel of flour, it is presumed under section 501 (e) (2) that petitioner shifted the entire tax burden to his vendees. This presumption, however, is not conclusive. Section 501 (i), *supra*, provides that either the taxpayer or the Commissioner may rebut it. Petitioner contends that he has rebutted it by proving the "costs of production" for the respective periods, set out in our findings. He contends that when such costs of production are considered, as is permitted by section 501 (i) (1) (B), the actual margin per unit for the taxable year 1935 is 52 cents less than the actual average margin per unit for the base period, and that this indicates that he did not pass any of the processing tax on flour of $1.38 per barrel on to others. Details of petitioner's computation of the actual margins made from his books for the respective periods are shown in the findings of fact and need not be repeated here.

We think the items which petitioner has included as representing costs of production are all proper items to be considered. We do not think, however, that the consideration of those items proves that petitioner did not shift any of the processing tax of $1.38 per barrel of flour on to his vendees. The computation shows that petitioner's costs of production for the taxable year 1935 increased $1.96 per unit over what they were during the base period. Petitioner's position seems to be that by making proof of what he terms the actual margin in 1935 as compared to the actual margin for the base period, he has proved that he shifted the increased cost of those items which went into production such as gas, labor, etc., to his vendees, whereas he, himself, absorbed the $1.38 per barrel processing tax. We think petitioner's contention that the entire tax of $1.38 per barrel was borne by him is based upon the assumption without proof that petitioner shifted $1.44 of the $1.96 increased costs of production per unit rather than any of the processing tax. Petitioner's sales per unit for the taxable year 1935 increased $4.34 ($23.05 minus $18.71) over what they were for the base period. Of this increase, $2.90 represented a shift by petitioner to his vendees of the additional cost of flour exclusive of the processing tax. This left a net increase in the margin per unit of $1.44. We think that on the evidence in the record we must find that this change in margin of $1.44 was due in part to a shift of the processing tax of $1.38 per unit and in part to a shift of the increase in costs of production of $1.96 per unit, and that in accordance with section 501 (i) the change in margin should be apportioned between the tax and the increase in costs of production. We think

138/334 of $1.44 or 59 cents should be apportioned to the shift in processing tax and 196/334 of $1.44 or 85 cents should be apportioned to the shift in increased costs of production. Upon this basis we find that 59/138 of the reimbursement of $3,831.85 received by petitioner from the Sperry Flour Co. or $1,638.25, was shifted by petitioner to others.

Respondent does not contend that it would not be in order for us to apportion the change in margin between the tax and the increase in cost of production, in a proper case, notwithstanding no attempt was made to make such an apportionment in the deficiency notice. What he contends in his brief on this point is that petitioner has not made out a case rebutting the presumption which arises upon proof of the average margin computed under section 501 (e) and therefore no apportionment is in order. For reasons which we have already stated, we think petitioner has successfully rebutted the presumption named, at least, in part. Respondent in his brief argues that if we reach the latter conclusion then we should apportion as contemplated by section 501 (i) (1). On that point respondent says in his brief: "Even if it should be determined that the change in margin was due in part to the Federal excise tax burden and in part to the increase in the cost of some other item, the change in margin should be apportioned between them."

With this contention we agree and we have made the apportionment along the lines which we think the statute contemplates.

We, therefore, hold that petitioner is subject to an unjust enrichment tax equal to 80 percent of $1,647.95 ($1,638.25 plus $9.70) rather than 80 percent of $3,841.55, as determined by the respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*