Dependable Packing Company, a Partnership, v. Commissioner. Dependable Packing and Provision Company, an Illinois Corporation, v. Commissioner.Dependable Packing Co. v. CommissionerDocket Nos. 442 PT and 443 PT.United States Tax Court1945 Tax Ct. Memo LEXIS 1; 4 T.C.M. (CCH) 1111; T.C.M. (RIA) 45379; December 29, 1945W. R. Brown and W. Robert Brown, for the petitioners. Irene F. Scott and R. E. Maiden, Jr., for the respondent. OPPERMemorandum Findings of Fact and Opinion OPPER, Judge: By these consolidated proceedings Dependable Packing Company, a partnership, (hereinafter sometimes referred to as petitioner), seeks a review of respondent's disallowance of an amended claim for refund of $130,033.87 processing tax paid upon the processing of hogs 1 from November 5, 1933, through January, 1935, and in part of the months*2 of February and August, 1935; Dependable Packing and Provision Company, a corporation, seeks a review of respondent's disallowance of a refund of $2,348.05 of such taxes for the period October and November, 1935. The primary issue, of course, is what amount, if any, the petitioners are entitled to receive as refunds of processing tax. The answer to this question is dependent upon the decision on motions to dismiss both cases for lack of jurisdiction; upon the effect to be given certain evidence pertaining to concerns asserted to be "representative"; and finally, upon consideration of the evidence of record in determining the ultimate question of where the burden of the tax fell. The cases are presented upon pleadings, stipulation, and evidence adduced at the hearing. Findings of Fact The stipulated facts are hereby found accordingly. Together with other admissible material of record they disclose the following: Petitioner was a partnership composed of Fred Sans, Samuel Chapman, Frank Penczek, and Charles Penczek, with its place of business at 3840 South Emerald Avenue, Chicago, Illinois. Petitioner*3 commenced business operations in May, 1932, and continued to operate until August 31, 1935. It did not slaughter hogs at any time during its period of business operations. The Empire Packing Company slaughtered all of the hogs here involved and collected killing charges from petitioner for so doing. For each month of the period from November 5, 1933, to August 31, 1935, petitioner filed processing tax returns in its own name as processor for the hogs slaughtered for it by the Empire Packing Company. The amounts shown to be due by these returns were assessed against petitioner on the basis of these returns and were paid by checks drawn by the Empire Packing Company payable to the collector of internal revenue, as follows: November, 1933$ 1,619.84December, 19333,754.19January, 19344,153.08February, 19346,972.82March, 19349,864.40April, 19347,624.21May, 193410,095.92June, 193412,426.30July, 19346,091.24August, 193410,192.93September, 19347,806.25October, 19349,819.89November, 193410,963.35December, 193410,590.32January, 193510,734.86February, 19355,000.00August, 19351,325.62 The amount of tax paid for*4 February, 1935, was 55.53 percent of the tax shown by the return to be due for that month, and the amount of the tax paid for August, 1935, was 25 percent of the tax shown by the return to be due for that month. The payments so made were credited on the records of the collector of internal revenue to the account of the petitioner. During its period of operations the petitioner had no bank account in its own name. All moneys or checks received by petitioner were deposited in the bank account of the Empire Packing Company and were commingled with the moneys and accounts of the Empire Packing Company. All payments by check for hogs slaughtered by Empire Packing Company for the petitioner, amounts shown by returns to be due as processing tax with respect to this slaughter, and other expenses, were made by checks drawn on this account by the Empire Packing Company, and charges of the amounts of such checks were entered in the books of Empire Packing Company on an account denominated "Dependable Packing Company Account." On August 31, 1935, by previous arrangement, the entire business, assets, properties, and ilabilities of the petitioner were taken over by the other petitioner, Dependable*5 Packing and Provision Company, a corporation under the laws of Illinois, organized August 24, 1935, for the specific purpose of acquiring, investing in, and owning the business, property, and assets of petitioner, and carrying on petitioner's business and discharging petitioner's liabilities. It carried on the business formerly operated by the partnership from September 1, 1935, until October, 1936, when it ceased business operations. The corporation never acquired any physical properties (exclusive of hog carcasses and pork products acquired in the operation of its business) except those acquired from the partnership, and it operated the business which had previously been operated by the partnership in the same manner as it had operated that business. The two chief stockholders of the corporation were Fred Sans who owned 50 shares and Samuel Chapman who owned 40 shares, out of a total of 100 shares. They had both been partners. The Dependable Packing and Provision Company was engaged in a similar business to that conducted by the partnership and was similarly circumstanced. Petitioner was not a processor of hogs under section 9 of the Agricultural Adjustment Act. (7 U.S.C. § 609.)*6 The Empire Company which slaughtered all of the hogs involved in this proceeding was a first domestic processor of hogs under the above-cited Act. In the regular course of business, petitioner's books and records used accounting periods of four and five weeks. During the period May, 1932, to November 4, 1933, the total number of hogs slaughtered for petitioner, as shown by entries on its general ledger, was 30,182. The total number of hogs bought by petitioner thus shown was 31,766. The purchase weight of the hogs bought was 5,477,310 pounds and the cost of the hogs bought was $136,893.42. Petitioner's general ledger discloses that the number of hogs purchased from November 6, 1933, through January, 1935, plus 55.53 percent of the hogs purchased in February, 1935, and plus 25 percent of the hogs purchased in August, 1935, was 51,402; that the purchase weight of these hogs was 7,290,602 pounds and that the cost was $229,089.05. The number of hogs slaughtered from November 6, 1933, through January, 1935, plus 55.53 percent of those slaughtered in February, 1935, and plus 25 percent of those slaughtered in August, 1935, was 50,293. Entries appear in petitioner's general ledger of figures*7 designated as the number of hogs purchased, the number of hogs slaughtered, the weight at the time of purchase, the dressed weight, the cost and the killing charges, which when adjusted to a monthly basis by apportioning any weekly periods falling into more than one calendar month are as follows: PurchaseWeight ofDressedCostNo. of HeadHogs BoughtWeightof HogsKillMonthBoughtKilledPoundsPoundsBoughtChargesMay '329285136009300$ 184.65June8578151538901038903,156.34$ 571.60July10099291841531251634,807.55584.26August117811071952871339624,974.46711.84September162214992680301811557,242.89935.50October204618933168552126358,318.921,255.43November230721923790702560359,920.681,339.77December240822493699052497207,796.271,385.40Jan. '33235922813285732290937,770.131,375.27February214821003063342154697,309.431,117.83March220621743266082313509,049.661,095.10April194618913310152327589,064.841,077.40May171216452941302026658,599.931,068.93June178217072945602011207,780.431,110.42July142813192667931800285,511.01856.80August217520144258932749278,551.501,351.76September168416023631842513008,018.131,282.14October2352223456947039899716,091.001,787.20Nov. 1-445544689960629732,745.60356.80May '32 to Nov. 4, '33317663018254773103752540$136,893.42$19,263.45Nov. 6-3016871615323320229090$10,339.00$1,103.34December2261214844306531257612,538.381,717.86Jan. '34307029974390503087758,170.992,397.60February3397330846769032253010,708.062,646.40March3840376350828035760511,239.653,010.40April297129264082972918958,172.532,341.69May353834725421263831439,400.842,789.40June2898286656101740460214,112.152,292.40July192218993333672387228,442.951,519.20August2548250050038835544816,954.271,999.65September2427234336005525022013,799.211,874.75October3403329643845031561015,014.332,636.80November5160506157444040447220,440.923,818.90December4665460954260039099819,805.403,167.51Jan. '354572449850290036357327,073.593,035.72Feb. (to 3/2)(4390)(4306)(504560)(358747)(30,175.41)(2,907.01)55.53% Feb.2438239228018219921216,756.411,614.26August(2421)(2401)(261500)(182439)(24,481.49)(1,185.99)25% August60560065375456106,120.37296.49Total514025029372906025174081$229,089.05$38,262.37*8 Petitioner purchased for resale other pork products not in carcass form. On petitioner's general ledger there appear figures designated as the pounds and cost of such pork purchases, but no designation of the type (for example, hams, loins, shoulders, trimmings, etc.) of products purchased appears thereon. The general ledger carries the following figures designated as the pounds and cost of pork products purchased: MonthPoundsCostMay, 1932JuneJulyAugustSeptemberOctoberNovember835$ 89,02December1,42286.40January, 19334,330274.69February302.10March31031.00April2,817147.65May23617.70June4,445$ 302.22July8,627472.89August4,656246.52September8,976555.11October3,747229.70November 1-4Total40,431$2,455.00(May' 32 to Nov. 4, '33)Nov. 6-30 '3310,190$475.99DecemberJanuary, 19343,559292.35February5,141248.85March7,286471.14April5,721428.99May13,546877.69June55,1472,835.61July66,3412,882.65August86,6964,361.93September67,9924,802.02October89,8456,930.01November182,02312,038.63December378,49028,199.62January, 1935231,493$ 25,811.81Feb. (to 3/2)(239,627)(25,893.68)55.53% Feb.133,06514,378.76August(496,170)(64,193.63)25% Aug.124,04316,048.41Total1,460,578$121,084.46*9 Petitioner's general ledger does not contain any designation of the various cuts or articles sold by petitioner. Petitioner has produced no involices or sales journals which show any breakdown into cuts or articles of the products sold by it and has not produced any records which show the amount received for the various cuts or articles sold. On petitioner's general ledger there appear figures designated as the total pounds of products sold by petitioner (including pork products in other than carcass form bought for resale) and the amount received for the products sold, but no designation of the type (for example, hams, loins, shoulders, trimmings, etc.) of products sold, or the amount or a price received for the various types of products appears thereon. The general ledger carries the following figures designated as the total pounds sold and the total amount realized from sales: MonthPoundsAmountMay, 1932June73,189$ 3,008.65July119,6897,116.71August154,6478,371.53September186,39710,470.16October222,79211,943.85November252,19712,814.50December224,41810,071.17January, 1933247,60611,080.83February226,41510,683.64March228,06111,571.72April224,43010,475.62May209,87811,309.19June189,20010,109.53July193,3999,277.64August250,60812,898.37September293,96015,319.62October357,34919,731.97November 1-466,1113,559.63Total3,720,346$189,814.06(May, '32 to Nov. 4, '33)Nov. 6-30, '33265,470$14,669.34December300,20515,151.87January, 1934299,51015,619.69February344,86821,495.26March377,46126,112.69April281,57618,954.50May382,07824,692.36June473,78432,562.15July364,30725,643.66August439,72936,086.97September360,11034,328.80October410,93335,003.34November561,98047,297.67December872,10878,966.78January, 1935633,10574,336.10Feb. (to 3/2)(591,471)(71,545.65)55.53% Feb.328,44439,729.30August(581,369)(89,648.28)25% Aug.145,34222,412.07Total6,841,011$563,062.55*10 There appear on petitioner's general ledger figures designated as the pounds and values of inventories of hog products on hand at various times from September 16, 1932, to August 31, 1935. The date, pounds, and values appearing on the general ledger are as follows: InventoryDatePoundsValue9-16-324,972$ 239.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,2981,499.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,928890.4510- 7-3221,378899.0810-14-3217,555719.3910-21-3222,106875.2110-29-3213,965516.6811- 5-3212,678427.9911-12-328,702274.4111-19-3212,143459.8511-26-3214,380642.2112- 3-3234,2821,286.9412-10-3210,009370.9012-17-3218,933667.0112-24-3228,8671,034.4712-31-3251,4621,869.221- 7-3310,772403.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,157445.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,4151,321.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,9261,674.442- 4-3344,7001,832.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,7501,137.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,248666.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,4201,345.963- 4-3327,6401,077.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,9301,474.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,0501,765.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,2201,269.904- 1-3346,7401,986.454- 8-3347,9402,301.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,6782,008.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,0502,258.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,6403,032.005- 6-3365,9503,033.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,2652,604.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,2603,246.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,0403,137.206- 3-3361,6153,434.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,9504,371.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,1004,405.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,6554,491.037- 1-3380,6954,115.447- 8-3375,8553,868.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,8003,814.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,8003,525.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,6803,757.688- 5-3380,6004,191.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,4704,664.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,2003,531.008-26-33105,1405,151.869- 2-33104,2005,105.809- 9-3386,4004,406.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,8204,784.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,7004,603.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,2164,059.3110- 7-3386,2884,745.84*11 The tables and data contained in a publication of the United States Department of Agriculture, Bureau of Agricultural Economics, entitled "Prices of Hogs and Hog Products, 1905-1936," and prepared by Arthur T. Edinger, Associate Marketing Specialist, hereinafter referredto as Edinger's Tables, show the monthly average wholesale prices of hogs and hog products based on sales at Chicago, Illinois. They deal with hogs averaging 200-220 pounds of United States "good" or "choice" grade, sometimes referred to as "butcher hogs" the cuts from which are especially suitable for retail trade. The average yield of hogs in various cuts and products is also shown. The preslaughter weight of the hogs slaughtered by Empire Packing Company for petitioner during the tax period (November 6, 1933, through January, 1935, and part of February and August, 1935), were as follows for the months indicated: PeriodPoundsNovember 6 toNovember 30, 1933323,880December, 1933375,350January, 1934415,270February, 1934464,800March, 1934438,381April, 1934338,830May, 1934448,610June, 1934552,280July, 1934267,420August, 1934453,019September, 1934346,190October, 1934435,930November, 1934492,909December, 1934476,547January, 1935483,683February, 1935(402,529)February, 1935 (55.53%)223,524August, 1935(236,756)August, 1935 (25%)59,189Total6,595,812*12 No preslaughter weight is available for the period before and after the tax. In the regular course of business the books and records of petitioner Dependable Packing and Provision Company used accounting periods of four and five weeks as was true in the case of petitioner Dependable Packing Company. On the general ledger of the Dependable Packing and Provision Company there appear figures similar to those appearing on the general ledger of Dependable Packing Company designated as the number of hogs bought, the purchase weight of the hogs bought, the cost of the hogs bought, the number of hogs slaughtered, and the killing charges paid to the Empire Packing Company for slaughtering these hogs. These figures, when adjusted to a monthly basis, are as follows: PurchaseWeight ofDressedCostNo. of HeadHogs BoughtWeightof HogsKillMonthBoughtKilledPoundsPoundsBoughtChargesFeb. '365,3465,2571,006,630453,750$93,739.73$3,550.16March3,7983,698815,341763,15073,062.052,496.40April2,5392,500664,897381,80063,452.121,687.29May3,3563,313735,927613,31066,295.742,236.28June2,7832,742695,687510,76561,111.781,851.10July1,8621,826404,770271,05532,697.481,658.9719,68419,3364,323,2522,993,830$390,358.90$13,480.20*13 Dependable Packing and Provision Company's general ledger also shows the following: Pork Products Not in Carcass FormPurchased For ResaleMonth1936PoundsCostFebruary12,752$1,582.52March6,562758.42April7,286640.13May19,8511,920.20June13,0891,022.58July6,293679.4465,833$6,603.29TOTAL SALESMonth1936PoundsAmountFebruary898.389$120,027.58March - (1/3 of 4/4)633,68280,282.76April - (2/3 of 4/4 & 2/3of 5/2)495,86766,626.32May - (1/3 of 5/2)527,81368,827.86June - (1/2 of 7/3)525,70365,171.98July - (1/2 of 7/3 & 5/6of 8/1)360,02743,383.193,441,481$444,319.69INVENTORIESDateWeightAmount2-1-36213,460$28,252.992-8189,44025,761.012-15181,28024,877.742-22186,91025,853.333-7196,20026,378.223-14175,90023,996.823-28218,20030,709.254-11180,13026,175.874-25222,50030,880.825-9245,46032,569.085-23240,18031,474.566-20274,47436,747.567-11296,86040,042.647-25258,39435,087.45Petitioner's general ledger is a record kept in the regular course*14 of its business. The figures in the general ledger were taken from original entry records which were destroyed in the ordinary course of the petitioner's business. By letters to the collector of internal revenue petitioner, under oath, requested extensions of time for paying processing taxes, stating: "February 28, 1934. * * * * *"We ask you, herewith, to let us have another extension of thirty days in which time we will have collected all the tax covered by this return. * * * * *"March 28, 1934. * * * * *"Due to the higher cost of hogs, increased labor expenses, and the fact that it takes us sixty days before we can begin to collect the tax it is impossible for us to pay the tax on the date due. * * * * *"March 29, 1934. * * * * *"In reply we wish to state that this tax is tied up in increased inventories and accounts receivable, and, inasmuch as we have not been able to collect any of the tax because of the slow movement of pork payment at this time would force us to curtail our operating activities, * * * * *"October 25, 1934. [In re July tax] * * * * *"We have previously outlined to you that it is impossible for us*15 to pay taxes in advance of being able to collect them from our customers. "Our inventory and accounts receivable amount to about six or seven times what they were before the processing tax was put on hogs. * * * * *"We do not ask you for a thirty day extension of the July tax but merely ask you, and always have done, to let us pay this tax by weekly checks as we are able to collect it. * * *" * * * * *Similar representations were made in another letter dated October 25, 1934, with reference to August tax. "March 30, 1935. [In re Feb. tax] * * * * *"This tax is represented on our books by inventories and accounts receivable and payment on the due date, March 30th, before we ourselves have collected the tax, would work a great hardship upon us by absorbing our ready capital, * * *" * * * * *Similar representations were made in another letter dated March 30, 1935, with reference to January tax; and in letter dated April 30, 1935, with reference to February and March tax. "June 29, 1935. * * * * *"Due to the extremely high price of hogs and the slow movement of pork our working capital is greatly restricted. Payment of this tax, which is*16 represented on our books by inventories and accounts receivable, on the due date, June 29th, before we ourselves have collected it would work a great hardship upon us by absorbing our already limited capital and forcing us to cut down our operations and lay off a large number of our employees. * * * * *"May 31, 1935. * * * * *"This tax is represented on our books by inventories and accounts receivable and payment on the due date, May 31st, before we ourselves have collected the tax would work a great hardship upon us by absorbing our working capital which is already seriously limited because of the extremely high price of hogs, the draggy movement of pork, and the fact that at this season we are putting a large amount of pork into cure and are, therefore, carrying a very heavy inventory. * * * * *"July 31, 1935. * * * * *"The high price of hogs and the slow movement of pork have greatly restricted our working capital. Also this tax is represented on our books by inventories and accounts receivable, and payment before we ourselves had collected it would work a great hardship upon us by absorbing the balance of this already limited capital and, thereby, *17 forcing us to cut down our operations. * * *" * * * * *Letters dated August 31, 1935, September 30, 1935, October 31, 1935, and November 30, 1935, make substantially similar statements. Over the period during which the processing tax was paid, November, 1933, through September, 1935, petitioner purchased hogs of an average weight of 142 pounds. The average weight of hogs purchased by other companies, urged by petitioner as "representative," is as follows: P. Brennan Co.382Miller & Hart, Inc.245Robert & Oake, Inc.242Agar Packing & Provision Co.245Reliable Packing Co.145Over the period before the tax, November, 1931, through October, 1933, petitioner purchased hogs of an average weight of 172 pounds. The average weight of hogs purchased by the previously named companies for this period was as follows: P. Brennan Co.383Miller & Hart, Inc.234Roberts & Oake, Inc.240Agar Packing & Provision Co.258Reliable Packing Co.174Over the period after the tax, February through July, 1936, Dependable Packing & Provision Company purchased hogs of an average weight of 220 pounds. The average weight of hogs purchased by*18 the previously named companies for this period was as follows: P. Brennan Co.380Miller & Hart, Inc.256Roberts & Oake, Inc.261Agar Packing & Provision Co.256Reliable Packing Co.197Over the period during which the processing tax was paid petitioner paid an average of $3.14 per 100 pounds for hogs. The average price per 100 pounds paid by the previously named companies for this period was as follows: P. Brennan Co.$4.46Miller & Hart, Inc.4.99Roberts & Oake, Inc.$5.10Agar Packing & Provision Co.5.92Reliable Packing Co.4.07Over the period before the tax, November, 1931, through October, 1933, petitioner paid an average of $2.50 per 100 pounds for hogs. The average price per 100 pounds paid by the previously named companies for this period was as follows: P. Brennan Co.$3.45Miller & Hart, Inc.4.09Roberts & Oake, Inc.4.05Agar Packing & Provision Co.3.88Reliable Packing Co.3.27Over the period after the tax, February through July, 1936, petitioner Dependable Packing & Provision Co. paid an average of $9.03 per 100 pounds for hogs. The average price per 100 pounds paid by the previously*19 named companies for this period was as follows: P. Brennan Co.$ 9.07Miller & Hart, Inc.10.14Roberts & Oake, Inc.10.14Agar Packing & Provision Co.10.11Reliable Packing Co.9.27Neither the claims for refund filed by P. Brennan Co., Miller & Hart, Inc., Roberts & Oake, Inc., and Agar Packing Co., nor the reports of agents of the Bureau of Internal Revenue in connection therewith disclose any prices received for products sold by these concerns. The figures for prices received for products sold used in each of these claims and in the reports of the Bureau agents covering an investigation of these claims for both the period before and after the tax period were obtained from Edinger's Tables. The figures appearing therein were not used in settling the respective cases. Settlement was effected in lump sum amounts also covering unjust enrichment liability and floor stocks tax claims where they were involved. Opinion Respondent continues to urge that we hold that the Tax Court lacks jurisdiction, a matter previously decided against him after a prior hearing on that question. Dependable Packing Co., 1 T.C. 861. We abide by the conclusion there*20 reached. Respondent also urges petitioner's letters to the collector in seeking to delay the tax payments as being proof that the tax was passed on. The statements in question are equivocal in their nature and need mean no more than that petitioners would not be in funds to pay the tax until they had collected the sales price from their customers. We are not persuaded that without more they establish that the tax burden was shifted. Cf. Commissioner v. Bain Peanut Co. of Texas (C.C.A., 5th Cir.), 134 Fed. (2d) 853. Petitioner's business history was not such that it had the factual data for all the time of operation covered in the statutory formula 2 for making a prima facie ascertainment of whether the processing tax was passed on (Revenue Act of 1936, section 907) - a primary requisite for refund. Petitioner has attempted to make its case under a statutory provision designed to permit taxpayers to overcome such difficulty by supplying missing data from that of representative concerns. We cannot conclude that any of the figures proffered us (except from the Dependable Packing and Provision Co.) are such as to qualify as those of concerns "engaged in similar business*21 and similarly circumstanced" within the meaning of the statutory provision. (Revenue Act of 1936, section 907 (c)). The information designed to supply the missing evidence comes in large part not from the experience of the concerns themselves but from Edinger's Tables. In a further effort to establish its right to a refund petitioner has made a factual comparative showing not in strict accord with the statutory formula (see Webre Steib Co., Ltd. v. United States, 324 U.S. 164, which is a marginal computation based on figures pertaining to its own operations during the parts of the statutory periods it was in business. As part of his brief respondent "prepared proper margin computations" 3 on "the basis of [a computed] purchase weight [and cost] of the hogs killed," pre-slaughter weight and actual cost not being available. Petitioner has accepted these purchase weight figures as well as respondent's computed "cost of hogs killed" figure for its margin computation. In arriving at its current sales value*22 per unit petitioner uses the stipulated monthly figures of pounds of products sold, multiplies by the accepted and established factor of 1.32 4 for restoration of pounds of pork sold, to purchase weight of hogs slaughtered, and divides by the also stipulated figures of amounts of sales for the respective months. Respondent's position that distortion results by reason of the inclusion in the figures used of certain pork which petitioner bought and resold can be met in the same manner (using the above-described figures) that a similar problem was disposed of in Standard Knitting Mills, Inc., 47 B.T.A. 295, 307. The procedure there outlined is as follows (p. 307): * * * The statute requires that there be ascertained a "margin per unit" without specifying how it shall be done. That unit is plainly a pound of lint cotton. We therefore seek to learn what part of the aggregate "difference" or "profit" is to be ascribed to a pound of lint cotton. In our opinion, that object can be accomplished, and accomplished in compliance with the statute, by first ascertaining the proportion, by weight, which own-processed cotton bears to the entire weight of the articles sold, and by then*23 taking that proportion of the aggregate "difference" or profit. thus arriving at a figure which, under the statute, is presumed to be the aggregate profit from own-processed cotton alone. Then by dividing such amount of profit presumed attributable to own-processed cotton, by the number of pounds of own-processed cotton, the result is a presumption of margin profit for a pound - the presumed "margin per unit" described by the statute. In applying this formula, the assumption should be made that the number of pounds of purchased pork sold in any month was the equivalent of the quantity bought during that month. The operative figures as to the partnership are stipulated and the computations of purchase weight and cost of hogs slaughtered made by respondent and now accepted by petitioner to which reference has already been made, should be used in preparing the margin computations. Respondent's objection to the admission in evidence of figures from petitioner's general*24 ledger is overruled. Even if the ledger would not answer the requirements of the "Federal Shop Book Rule," 28 U.S.C., § 695, the figures are admissible as secondary evidence of original records which have been duly accounted for. 5 Wigmore on "Evidence," Third Ed., 1558. Our earlier exception of Dependable Packing & Provision Company, the partnership's successor corporation, from those concerns thought not to be representative was grounded on our conclusion that it was the most "representative," "engaged in similar business," and "similarly circumstanced." This being so, we think it desirable under the "rule of common sense and fair play" which petitioner urges us to apply, that its available history for the tax and base periods 5 be joined with the history of the partnership, and that the ultimately determined margin figure be applied to both the partnership and corporation cases to ascertain the extent of the refund, if any. The amount of the respective tax burdens borne and not shifted will then be the favorable unit margin, if any, times the tax-paid units processed by the respective petitioners. The necessary figures have not all been set forth, but petitioner*25 represents that they are available in the record. The facts also disclose that there was an increase in average killing charge per unit in the tax period of about $.167, 6 over that in the base period, a further showing to petitioner's advantage which, although not strictly within the statutory provisions (Revenue Act of 1936, section 907 (e)), is entitled to consideration in determining the ultimate question of the extent to which the tax was borne. Petitioner recognizes that it has no claim to the aggregate of this per unit increased slaughtering costs and the tax period favorable margin. It has offered a formula for apportionment of the burden borne between the tax and the increased charges to which respondent appears to take no exception. These computations should accordingly also apply if it develops that there is a margin favorable to petitioner. If not, the proportion should be determined in accordance with the principles set forth in E. W. Stockton, 44 B.T.A. 514, 519, 520. Obviously, the foregoing*26 computations will have to be made under Rule 50. The above disposition of the problem is recognized as not strictly in accordance with any particular reference in the statute; nevertheless, it seems to us the nearest approach to a method of arriving at the "actual extent" of the burden of the tax borne which the state of the record could permit. Decisions will be entered under Rule 50. Footnotes1. The tax was in effect from November 5, 1933, to January 6, 1936.↩2. Dependable Packing Company was not in business during the first six months of the twenty-four month period, nor for the entire six months post-tax period.↩3. Asserted by him to be "the most nearly correct that can be made from the evidence that has been introduced in this case." ↩4. See: Edinger's Tables, p. 3; T.D. 4518, and T.D. 4425↩.5. The corporation was in business from September, 1935, until October, 1936.↩6. ↩38262.37 =$ .5377128119263.45 =.37051994$ .167