CHEROKEE TEXTILE MILLS v. COMMIS-
SIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVE-
NUE v. CHEROKEE TEXTILE MILLS.

Nos. 10334, 10335.

Circuit Court of Appeals, Sixth Circuit.
March 24, 1947.

Scott P. Crampton, of Washington, D. C. (George E. H. Goodner and Scott P. Crampton, both of Washington, D. C., on the brief), for Cherokee Textile Mills.

I. Henry Kutz, of Washington, D. C. (Sewall Key, Helen R. Carloss, and F. E. Youngman, all of Washington, D. C., on the brief), for the Commissioner.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The claim of petitioner, Cherokee Textile Mills, for refund of $105,198.80 of processing taxes, was reduced to an award of $1,070.06 by the Tax Court of the United States. The Commissioner of Internal Revenue, who rejected the claim in en-

tirety, has also petitioned for review, praying this court to modify the decision of the Tax Court by holding that the taxpayer is due no refund whatever.

The case has been here before under the style of Cherokee Spinning Co. v. Commissioner of Internal Revenue, 6 Cir., 143 F.2d 587, the petitioner having since then changed its corporate name to Cherokee Textile Mills. On the previous hearing, this court was called upon to review the award to petitioner of a refund of $25,467.-25 by the Processing Tax Board of Review. The record was found to be incomplete and unsatisfactory, the findings of fact inadequate, and the basis of decision not apparent; all of which necessitated a remand. The remand was to the United States Tax Court, inasmuch as the Board of Review had been abolished and its jurisdiction vested in the Board of Tax Appeals by the Revenue Act of 1942, Ch. 619, 56 Stat. 798, section 510(a), et seq., 26 U.S.C.A. Int. Rev.Acts, page 359 et seq. As is well known, the Board of Tax Appeals soon thereafter became the Tax Court of the United States.

In our per curiam opinion, we ordered that the record already made before the Processing Tax Board of Review should be permitted to be augmented by additional evidence, if guiding light might be shed upon the controversy by such course. We directed further that the Tax Court should permit reargument of the case as if it had not been previously tried, should "file appropriate findings of fact and conclusions of law, and render decision upon the full record in accordance with the law and the evidence." We suggested that an opinion by the Tax Court revealing the rationale of decision "would be most helpful here should a review be again sought." In our judgment, the Tax Court has faithfully performed its onerous task in disentangl-ing an unusually complicated mass of confusing factors, which generally enter, but in lesser degree, into the decision of a processing tax case.

During the tax period involved, from August 1, 1933, to April 6, 1935, and for many years prior thereto and thereafter, the petitioning taxpayer had been engaged in operating a mill in Knoxville, Tennessee, for the first domestic processing of cotton. Its processing operations were recognized as subject to the taxing provisions of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq. Petitioner, accordingly, paid processing taxes during the period involved to the extent, principal and interest, of $105,198.80. In December, 1935, the Agricultural Adjustment Act was held unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and in Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L. Ed. 513. Shortly thereafter, by the Revenue Act of 1936, Ch. 690 [49 Stat. 1648], section 902 et seq., 26 U.S.C.A. Int.Rev. Acts, page 960 et seq., refunds of processing taxes collected under the Agricultural Adjustment Act were authorized; subject, however, to definite and stringent conditions and limitations which are relevant in the present litigation.

Section 902 of the Revenue Act of 1936 provides that no refund shall be made or allowed of amounts collected under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner, *in accordance with the regulations prescribed by him,* or to the satisfaction of the trial court or the Board of Review, as the case may be, that he bore the burden of the tax and has not been relieved thereof nor reimbursed therefor, nor shifted it directly or indirectly through the methods specified;[1] or that he has repaid unconditionally the amount of the tax to

---

[1] "(1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof;"

his vendee,[2] under the conditions stated in the statute.

Section 903 is most exacting with respect to the filing of claims for refund. Such claims must conform to regulations prescribed by the Commissioner.[3] Section 916 of the Revenue Act also authorizes the Commissioner to prescribe such rules and regulations as he deems necessary to carry out the provisions of the title.

In Section 907(a) of the Revenue Act, it is provided that, where the refund claimed is for an amount paid or collected as processing tax, as defined in the Act, it shall be prima facie evidence that the burden of the processing tax was borne by the claimant to the extent (not to exceed the amount of the tax) that the average margin per unit of the commodity processed was lower during the tax period than the average margin was during the period before and after the tax; and that if the average margin during the tax period was not lower, it shall be prima facie evidence that none of the burden of such amount was borne by the claimant but that it was shifted to others. The method for determination of the average margin for the tax period and for the period before and after the tax is set forth in sub-section (b) of section 907.

Sub-section (e) of the same section permits rebuttal by either the claimant or the Commissioner of the presumption established by sub-section (a) by proof of the actual extent to which the claimant shifted to others the burden of the processing tax. What may be included in such proof, but without delimitation, is specified in sub-section (e).

Pursuant to the authority conferred by the Revenue Act of 1936, relating to claims for refund of processing taxes paid under the Agricultural Adjustment Act, Treasury Regulations 96 were promulgated. Article 202 thereof provides: "Facts and evidence in support of claim. Each claim shall set forth in detail and under oath each ground upon which the refund is claimed. It is incumbent upon the claimant to prepare a true and complete claim and to substantiate by clear and convincing evidence all of the facts necessary to establish his claim to the satisfaction of the Commissioner; failure to do so will result in the disallowance of the claim. The provisions of these regulations require that certain specific facts shall be stated in support of any claim for refund. The claimant is privileged to prove those facts in any manner available to him and to submit such evidence to that end as he may desire."

(1) Upon the remand of this case to the Tax Court, the Commissioner of Internal Revenue moved to strike certain evidence offered at the original hearing before the Processing Tax Board of Review. This evidence related to the production and sale by the taxpayer of a combination of cotton and wool cloth known as "mohair." The manufacturer had attempted to rebut the unfavorable presumption permitted by section 907(e) of the Revenue Act of 1936, by offering evidence tending to show that a profitable venture in manufacturing mohair cloth had caused its margin showing to become unfavorable.

No mention of mohair cloth had been made, either in the first claim or the amended claim for refund, in which the amount claimed had been stepped up. We think fair analysis of the refund claim justifies the statement, in the opinion of the Tax Court granting the motion to strike, that the Commissioner had not been apprized by the allegations of the refund claim, or by examination of the taxpayer's books and records in connection therewith, or otherwise, of any contention of the taxpayer based on the ground that it had man-

---

[2] "(1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

[3] "No refund shall be made or allowed of any amount paid by or collected from any person as tax under the Agricultural Adjustment Act unless, after the enactment of this Act, and prior to July 1, 1937, a claim for refund has been filed by such person in accordance with regulations prescribed by the Commissioner with the approval of the Secretary. All evidence relied upon in support of such claim shall be clearly set forth under oath. * * *"

ufactured mohair cloth during certain periods and not during others.

As reasoned by the Tax Court in its opinion published in 5 T.C. 175, the ground of the claim asserted before the Processing Tax Board not being included in the refund claims as filed, the evidence received by the Board, which the motion sought to exclude, could have relevancy only upon a new and different ground from that set up in the claim for refund. The evidence was, therefore, properly excluded from the record.

The Tax Court was not, as argued by the petitioner, precluded by the mandate of this court from striking the controverted evidence on motion of the Commissioner. In remanding the cause, we indicated no ruling as to the admissibility of evidence of record or no decision on any issue so as to establish it as "the law of the case." Our per curiam, in effect, directed as broad a review as possible by the Tax Court, inasmuch as we had found the findings of fact of the Processing Tax Board of Review inadequate and the basis upon which its decision was rested not apparent. Indeed, the Processing Tax Board of Review had received the evidence in question subject to a subsequent ruling on its competency; and that ruling was never made. Moreover, the Board of Review went out of existence without ever having acted upon the Commissioner's motion for a rehearing.

The action of the Tax Court in excluding the evidence is supported both by sound reasoning and by authority. In Vica Co. v. Commissioner of Internal Revenue, 1947, 159 F.2d 148, the Ninth Circuit Court of Appeals affirmed a decision of the Tax Court denying a claim for refund of processing taxes collected under the Agricultural Adjustment Act. The claim rested upon the same Act now under consideration [Chapter 690 of the Revenue Act of 1936]. It was held that a necessary part of a proper claim for refund is an adequate statement of the contention of the taxpayer of the extent to which he bore the burden of the processing tax, together with a statement of fact in support of that contention. The court quoted from and applied the principles of our recent opinion in United States of America v. Standard Oil Co., 6 Cir., 158 F.2d 126, decided December 5, 1946. It would seem unnecessary to repeat our rationalization in that case. Here, as there, we find no evidence sufficient to establish that, by such investigation as he made of the merits of the claim, the Commissioner waived compliance with the requirements of the statute or the Treasury Regulations.

We think, moreover, that the Tax Court correctly construed and applied the guiding principles of Angelus Milling Co. v. Commissioner of Internal Revenue, 325 U.S. 293, 299, 65 S.Ct. 1162, 89 L.Ed. 1619, wherein the Supreme Court held the evidence insufficient in the circumstances of the case to establish that the Commissioner of Internal Revenue, by investigating the merits of a claim for refund of processing taxes paid under the Agricultural Adjustment Act, had waived compliance with the requirement of Treasury Regulations as to the form of, and the information which shall be contained in, the claim for refund. The Supreme Court stated that "it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund."

In numerous cases, United States Circuit Courts of Appeals have upheld denial of recovery of processing taxes paid under the provisions of the Agricultural Adjustment Act upon the ground that the taxpayer failed to comply with conditions prescribed by the statute or by Treasury Regulations, or both, with respect to claims for refund. Tennessee Consolidated Coal Co. v. Commissioner of Internal Revenue, 6 Cir., 117 F.2d 452; Samara v. United States, 2 Cir., 129 F.2d 594, certiorari denied 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549; Arabi Packing Co. v. Commissioner of Internal Revenue, 5 Cir., 109 F.2d 278, certiorari denied 310 U.S. 645, 60 S.Ct. 1093, 84 L.Ed. 1412; Lee Wilson & Co. v. Commissioner of Internal Revenue, 8 Cir., 111 F.2d 313, 318; 8 Cir., 123 F.2d 232, 235; Caldwell Sugars, Inc. v. United States, Ct.Cl., 54 F.Supp. 544, certiorari denied 324 U.S. 851, 65 S.Ct. 710, 89 L.Ed. 1412. For further support of the proposi-

tion that complete compliance with the rigid requirements of the statute and Treasury Regulations pertaining to the recovery of processing taxes is necessary to qualify the taxpayer to recover taxes paid under the Agricultural Adjustment Act, see Franklin Peanut Co. v. Commissioner of Internal Revenue, 4 Cir., 144 F. 2d 979; New York Handkerchief Mfg. Co. v. United States, 7 Cir., 142 F.2d 111, certiorari denied 323 U.S. 725, 65 S.Ct. 58, 89 L.Ed. 582; 18th Street Leader Stores, Inc., v. United States, 7 Cir., 142 F.2d 113, certiorari denied 323 U.S. 725, 65 S.Ct. 61, 89 L.Ed. 583; Alexander Smith & Sons Carpet Co. v. Commissioner of Internal Revenue, 2 Cir., 117 F.2d 974; Oswald Jaeger Baking Co. v. Commissioner of Internal Revenue, 7 Cir., 108 F.2d 375. This heavy burden upon the taxpayer was early made clear by the Supreme Court in Anniston Manufacturing Co. v. Davis, Collector of Internal Revenue, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143, decided in 1937.

(2) The Tax Court filed detailed findings of fact,[4] which are fully supported by the record. Finding that the statutory margin computation would be unfavorable to the taxpayer and having eliminated evidence supporting its contention based on the manufacture of a combination of cotton and mohair cloth during the tax period, the

---

[4] Inasmuch as the findings and opinion of the Tax Court had not been published in its official reports when this case was argued and submitted, we think it advisable to quote important portions of both in footnotes. The salient portions of the Tax Court's findings are as follows:

"During the tax period (August 1, 1933, to April 6, 1935, inclusive) petitioner's sales were $1,951,846.87. The book value of petitioner's opening inventory on August 1, 1933, was $143.119.-03; the book value of its closing inventory on April 6, 1935, was $220,975.06. The computed gross value of articles processed from the commodity during the tax period is $2,029,702.90. The total cost of the commodity processed was $357,933.65; the total processing tax paid, including interest, was, as above stated, $105,198.80; the total number of units of the commodity processed with respect to which the tax was paid was 2,-496,789 pounds. The tax period margin per unit, computed from the foregoing, is $0.6274340.

"During the period before and after the tax (August 1, 1931, to July 31, 1933, inclusive, and February 1, 1936, to July 31, 1936, inclusive) petitioner's book sales were $2,339,614.50. In addition, petitioner deducted the sum of $17,672.10, from such sales on account of tax refunds. The total figure resulting is $2,-357,216.60. The book values of petitioner's opening inventories for August 1, 1931, and February 1, 1936, were $203,-530.37 and $156,685.52, respectively, or an aggregate of $360,215.89. The book values of closing inventories on July 31, 1933, and July 31, 1936, were $143,119.-03 and $154,085.40, respectively, or an aggregate of $297,204.43. The computed gross sales value of articles processed from the commodity during the base period is $2,294,275.14. The total cost of

the commodity processed was $487,209.-81; the total number of units processed was 4,062,666 pounds. The base period margin per unit computed from the foregoing, is $0.444797906.

"Such margin figures result in an excess tax period margin per unit of $0.-1826371.

"During the tax period the petitioner purchased cotton and wool yarn which it used in the manufacture of its articles. The cost of the cotton yarn purchased during this period totaled $108,058.90, and the cost of the wool yarn totaled $60,321.48. The cost of the wool and cotton yarn in relation to the commodity processed was $0.06744 per unit.

"During the period before and after the tax the petitioner purchased cotton and wool yarn which it used in the manufacture of its articles. The cost of the cotton yarn purchased during this period totaled $88,538.97, and the cost of the wool yarn totaled $12,279.84. The cost of the wool and cotton yarn in relation to the commodity processed was $0.-02482 per unit.

[During the tax period the petitioner expended in respect of its business the total sum of $1,256,763.39. (The expenses are itemized in the findings.)]

"During the tax period the expenditures for such items was $0.50335 per unit of the commodity processed.

[During the period before and after the tax petitioner expended in respect of its business the total sum of $1,466,697.-66. (The expenses are itemized in the findings.)]

"During the period before and after the tax the expenditures for each item per unit of the commodity processed was $0.36102.

"On a per unit basis there was a tax period increase in expenses, including purchased yarn, of $0.18495. * * *"

Tax Court, in an accompanying opinion, declared that the single issue remaining was whether on the whole record the petition had borne its burden of overcoming the statutory presumption and of showing by evidence apart from it that petitioner had, in fact, borne the burden of the cotton processing tax paid by it, or any part thereof.

 It being established by the highest authority that our function on review is merely to determine whether the decision of the Tax Court has warrant in the record and a reasonable basis in the law, and that when a reviewing court cannot separate elements of a decision so as to identify a clear-cut mistake of law the decision of the Tax Court must stand, we are constrained to affirm the decision of the Tax Court in the instant case. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 502, 64 S.Ct. 239, 88 L.Ed. 248; Commissioner of Internal Revenue v. Scottish American

Investment Co., Ltd., 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113; Webre Steib Co., Ltd. v. Commissioner of Internal Revenue, 324 U.S. 164, 173, 65 S.Ct. 578, 89 L.Ed. 819; John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 527, 66 S.Ct. 299. For application of the Dobson doctrine in processing tax cases, see Standard Knitting Mills v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 195, 198; Franklin Peanut Co. v. Commissioner of Internal Revenue, 4 Cir., 144 F.2d 979, 981, supra; Helvering v. Insular Sugar Refining Corporation, 79 U.S.App.D.C. 4, 141 F.2d 713, 714; Cotan Corporation v. Commissioner of Internal Revenue, 3 Cir., 147 F.2d 509.

The opinion of the Tax Court, based on its findings of fact, certainly has warrant in the record and a reasonable basis in law and we can identify no clear-cut mistake. We are content, therefore, merely to quote in a footnote the reasoning of the Tax Court by which its decision was reached.[5]

5 "As our findings show, the margin unfavorable to petitioner, that is, the amount by which its tax period proceeds exceeded those for the base period, was $0.18264 per unit. Production figures for the two periods, however, which are omitted from the margin formula, appear to show an increase in costs for the tax period of $0.18495 per unit. The difference, which may be described as representing the amount of increased expense per unit for the tax period, which was absorbed by petitioner and not passed on, is $0.00231. E. Regensburg & Sons v. Helvering, 2 Cir., 130 F.2d 507. But only a part of this amount was due to petitioner's absorption of the tax, the balance being presumably attributable to the increased costs of production.

"In computing its selling prices petitioner naturally sought to recover all of its costs, as well as to realize a profit and the processing tax was added in, as were the other costs. It would accordingly be impossible to segregate from the computations an amount which could unequivocally be specified as a recovery on account of either one of such factors. But it is possible to make an allocation as between the two in accordance with their respective sizes. In that situation under section 907(e) (1) the burden of the tax borne by the taxpayer may be computed by an apportionment between the increase in other costs and the tax. See E. W. Stockton, 44 B.T.A. 514, 520. The tax, including interest, per unit of

commodity processed, was $0.04213. The burden of the tax borne by this petitioner is accordingly to be arrived at by applying the fraction .04213/.22708 to the figure $0.00231 and by multiplying the result by the number of units processed. The balance, that is, .18495/.22708 of $0.00231 per unit, represents increased costs of production absorbed by petitioner, for which, of course, it is not entitled to be made whole by way of refund from the Federal Government.

"It is true that petitioner apparently made strenuous efforts to adjust its prices in such a way as to pass on to its vendees the full amount of the tax. This is relevant evidence as to the ultimate location of the economic burden. Webre Steib Co., Ltd., v. Commissioner, 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819. And it is a persuasive aspect of the present facts in concluding that part of the tax burden was passed on along with part of the other increases in costs. But it does not necessarily follow that petitioner was entirely successful in this attempt to shift the burden. We do not regard that factor as conclusive by itself in respondent's favor, nor as more than one aspect of the whole record upon which is to be established under the provisions of section 907(e) the actual extent to which the burden was borne.

"In computing the amount of increased costs in the tax period we have resolved some incidental issues in petitioner's favor. The amount of $17,672.10 refunded

■ (3) One question remains. The Commissioner urges that the Tax Court erred in failing to pass upon or give proper effect to an affirmative issue raised in his answer: namely, that section 911 of the Revenue Act prevents a refund to the taxpayer of any part of the amount of $6,149.75 refunded to its vendees. On the record, the position of the Commissioner is apparently well taken, for the Tax Court did not pass upon that issue. Inasmuch as the proceedings in the Tax Court, after the remand, conformed to this court's mandate and a decision on the merits was appropriately rendered, the contention of the petitioning taxpayer that the Commissioner's appeal was untimely will not stand. The thirty-day limitation contained in section 1140(c) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1140(c) (2), is not applicable. The mandate of this court directed that the Tax Court should conduct a rehearing, file findings of fact, and render its decision thereon. See Virginia Lincoln Furniture Corporation v. Commissioner of Internal Revenue, 4 Cir., 67 F.2d 8, for discussion of the distinction between the remand of a case to the Tax Court for mere necessary calculations, in which event the time allowed for filing a petition to review is only thirty days, and a remand for rehearing on the merits, in which the time for the filing of the petition was six months for the years involved in the cited case, later changed to three months. Internal Revenue Code, Sec. 1142, 26 U.S.C.A. Int.Rev.Code, § 1142. In the instant case, the Commissioner's petition for review was filed within the three months' limitation.

The decision of the Tax Court upon all the issues decided is affirmed; but the cause is remanded to it for decision of the single pretermitted issue.

by petitioner to its vendees in the period after the tax and deducted on its books from gross sales in the post-tax period has been added back in order to arrive at actual total sales for the period in question. Certain other items of commissions and advertising expense have been accepted as costs of the current period on the theory that petitioner has made the best proof to that effect available to it. See Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. And, as urged by petitioner, we have employed book values rather than market in dealing with inventories. But we cannot accept petitioner's method of computation of the unit figures since this does not consistently relate to the units of the commodity processed. And there is an obvious typographical error in petitioner's ultimate computation which vitiates the result urged. Petitioner is concededly unable to produce exact figures with respect to some relevant items. That requires, for example, that the amount of gross sales value entering into the margin calculation be a computed figure. (Arrived at by adjusting gross sales for opening and closing inventories.) Under the circumstances, our findings contain the most accurate and correct conclusions which it seems possible to draw from the record.

"A collateral question remains for consideration. It was suggested at the hearing before the Processing Tax Board of Review that refunds on account of the tax paid by this petitioner had been made to petitioner's vendees. The matter was left in abeyance at that time. If the parties cannot arrive at an agreed disposition of the facts in that respect and of their legal effect, the question may be dealt with in connection with the Rule 50 computation. [26 U.S.C.A. Int.Rev. Code following section 5012].

"Decision will be entered under Rule 50."