## FRANKLIN PEANUT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5238.

Circuit Court of Appeals, Fourth Circuit.

Aug. 26, 1944.

Wilton H. Wallace and Edward F. Colladay, both of Washington, D. C. (Colladay, Colladay & Wallace, of Washington, D. C., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States rendered in August 1943 (unreported). The proceeding involves a claim for refund of taxes paid on the processing of peanuts in the amount of $116,721.29, made by the the petitioner, Franklin Peanut Company, here referred to as the taxpayer.

The claim was duly filed by the taxpayer and disallowed in April 1940, by the respondent, Commissioner of Internal Revenue, here referred to as the Commissioner. The taxpayer then filed a petition before the United States Processing Tax Board of Review, contesting the disallowance.

By section 510 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, the Tax Board of Review was abolished and the

jurisdiction therefore vested in it was transferred and vested in the Tax Court of the United States. The instant proceeding was pending before the Board of Review on December 31, 1942, the effective date of the Revenue Act above mentioned. Hearings had been had and evidence taken before the Board of Review and this record was all passed upon by the Tax Court. The presiding officer at the hearings before the Board of Review made recommended findings of fact which were afterwards substantially adopted by the Tax Court.

■ The taxpayer, during the tax period involved herein, was a partnership composed of James Chesley Beale, J. I. Beale, Jr., R. I. Beale, and Cyrus W. Beale, with its principal place of business at Franklin, Virginia. The business had been in existence since about 1904 and was that of cleaning, grading, and shelling peanuts, and of selling processed peanuts to wholesalers and jobbers of peanuts throughout the United States. Taxpayer was a processor within the intent and meaning of the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., during the period from October 1, 1934 to April 30, 1935, inclusive, the taxing period.

The Tax Court made findings of fact and reached the conclusion of law that the taxpayer was not entitled to any refund. A decision was entered to this effect and the taxpayer filed this petition for review pursuant to the provisions of section 1141, Internal Revenue Code, (53 Stat. 164, 510, 26 U.S.C.A. Int.Rev.Code, § 1141) and sec. 510 of the Revenue Act of 1942.

The question presented here is whether the taxpayer established the fact that it bore the ultimate burden of any part of the processing tax paid by it.

The statute chiefly involved is section 902 of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 7 U.S.C.A. § 644, part of which reads as follows:

"Title VII—Refunds of Amounts Collected Under the Agricultural Adjustment Act

"§ 902. Conditions on Allowance of Refunds

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, * * *"".

The tax court found that the taxpayer had paid the amount of taxes claimed but that the company had not borne any part of the burden of the tax and among other facts found the following: That the total number of pounds of peanuts processed during the tax period (farmers' stock weight) was 11,672,129; that the total cost of these peanuts was $522,177.88; that the total gross sales value of the processed peanuts was $734,815.30, and that the average margin per pound of peanuts processed during the tax period was $.0082175.

Also, that the total number of pounds of peanuts processed during the statutory period before and after the tax was 52,548,423 pounds; that the total cost of these peanuts was $1,425,681.14, and the total gross sales value of the processed peanuts was $1,744,947.58; and that the average margin per pound of peanuts processed during the period before and after the tax was $.0060757.

The Board further found that the average margin for the tax period was higher than the average margin for the period before and after the tax by $.0021418 per pound.

That the taxpayer had earned a net income, after deduction of the processing tax, greater during the tax period involved than during the years immediately preceding and following the tax period; that if the company were allowed to recover the tax here claimed its net income would be far greater during the tax period than at any other time during its existence. The net income for the year 1935 would amount to over one hundred and nineteen thousand dollars, plus the tax paid during that year amounting to $68,534.99, a net income of over one hundred and sixty-five thousand dollars, when the highest net income reported for any year prior to 1935 back to 1919, inclusive, was $55,582.08, and the net income for the succeeding year 1936 was $20,681.60.

Invoices filed in the record indicate that on the effective date of the processing tax the taxpayer increased the sales prices of

its peanuts by an amount substantially equal to the amount of the processing tax and that immediately after January 6, 1936, when the taxing provisions of the Agricultural Adjustment Act were held unconstitutional, taxpayer reduced the sales prices of its peanuts by an amount substantially equal to the processing tax. The tax court further found that:

"Petitioner in its accounting treated the processing tax as an item of cost, the same as the cost of peanuts, the cost of production, etc., and fully recovered the processing tax in the same manner that it recovered all items of cost.

"At least 50 per cent of petitioner's sales of peanuts were made through brokers. With respect to each such sale petitioner deducted the amount of the processing tax applicable thereto from the gross invoice price before computing the broker's commission. These reductions in commissions were made for the reason that the brokers had agreed to help petitioner bear the processing tax to that extent.

"Beginning sometime about February 1935, it became the practice of petitioner to stamp upon contracts entered into between it and its customers for the sale of peanuts the following language:

" 'The present Processing Tax as levied by the United States Government is included in the price shown on this order, but any increase in this tax, or any other tax that may be levied by either the Federal or State Government that increases the cost of goods on this order shall be for account of buyer, and added to price herein stated.'

"Prior to the use of a stamp it had been the practice of petitioner to type similar provisions upon its contracts of sale of peanuts with respect to the processing of which a tax had been paid; and on many of its invoices statements as follows, or to the same effect, were either typed or stamped:

" 'The processing tax has been included in the price on this shipment.'

\*   \*   \*   \*   \*   \*

" 'The present processing tax as levied by the United States Government is included in the price shown on this invoice.'

"Otherwise, petitioner represented to its customers by telephone and by letters that the prices paid by them for peanuts included the processing tax, the following typical reply having been made to a customer who inquired relative to the inclusion of the processing tax in the invoice prices of peanuts shipped to the customer during the tax period:

" 'We do not see where it is necessary for us to put the certificate as outlined in your letter on each invoice covering peanuts we ship you. The peanuts we are shipping includes the Processing Tax of 1½¢ lb. on shelled peanuts and 1.05¢ lb. on peanuts in the shell. We pay 1¢ lb. tax on farmers' stock when we use them and the conversion figures are as mentioned above. When the tax on peanuts we use is due we pay same.' "

It is contended on behalf of the taxpayer that while it admits that the statutory marginal presumption is adverse to it that this presumption has been rebutted by uncontradicted evidence showing the economic factors that enabled the taxpayer to realize larger profits in the tax period. Taxpayer also contends that the expert evidence was not passed upon by the Tax Court and was ignored to an extent that constituted harmful error.

That among the economic factors was a known scarcity in this country of fats and oils, with the result that a tremendous demand arose for the diversion of peanuts from the edible market to the oil market, and that the buying power of the consuming public was greatly increased after the year 1933 and that evidence of expert witnesses was rejected at the hearing before the Board of Review that should have been admitted.

The Tax Court has found against these contentions of the taxpayer and under the decision of the Supreme Court of the United States in Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, we are required to accept "without interference" findings of a Board which have support in the evidence.

As was said in Standard Knitting Mills, Inc., v. Commissioner of Internal Revenue, 6 Cir., 141 F.2d 195, 198:

"It has been repeatedly held that the findings of the Board of Tax Appeals, supported by substantial evidence, are conclusive unless the record clearly and convincingly requires a contrary conclusion."

We know of no authority to the contrary.

A very heavy burden of proof is cast upon the taxpayer seeking refund of processing taxes. Finck Cigar Co. v. Commissioner, 5 Cir., 134 F.2d 261, certiorari denied 320 U.S. 736, 64 S.Ct. 35; I. L. Walker Tobacco Co. v. Commissioner, 6

Cir., 129 F.2d 464; Colonial Milling Co. v. Commissioner, 6 Cir., 132 F.2d 505, certiorari denied 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148.

Congress, however, in order to facilitate proof sustaining this burden and in order to protect a taxpayer's normal margin of profit, provided in Section 907(a) of the 1936 Revenue Act, 7 U.S.C.A. § 649(a), that it shall be prima facie evidence that the burden of the tax was borne by the taxpayer to the extent, but not to exceed the amount of the tax, that the taxpayer's average margin of the commodity processed was lower during the tax period than his average margin was during the period before and after the tax. In the instant case we find the margin much higher during the taxing period than during the period before and after the tax.

In Helvering v. Insular Sugar Refining Corporation, App.D.C., 141 F.2d 713, 716, Groner, C. J., said:

" * * * Congress provided a simple formula which should apply in those cases in which complicated accounting considerations made it impossible to determine the precise question with reasonable certainty; and it constituted a Board of Treasury experts to apply the formula in a proper case.

"No one reading the evidence and exhibits in the present case can doubt that here the Congressional anticipation was realized and the wisdom and fairness of the statutory formula vindicated. For certainly, on this record it would be but conjecture and surmise to say that the tax burden was shifted, * * *."

A similar view with respect to the function of the presumption was expressed in Commissioner v. Bain Peanut Co., 5 Cir., 134 F.2d 853, 857:

"We think the plain purpose of Congress in creating the presumption was to obviate the necessity of strict proof in cases where neither the claimant nor the Commissioner could show directly whether the burden of the tax was or was not borne."

The taxpayer contends that the presumption raised by direct and undisputed proof of the fact as to the statutory margin being greater during the tax period than before and after was offset by expert evidence.

Most of the expert evidence offered was fully considered in the report of the presiding officer, who tried the case, in his recommended findings of fact. This report must be presumed to have been fully considered by the Tax Court in the performance of its duty in deciding the case, although not expressly referred to in the findings of the Tax Court. The presiding officer discussed in detail and at length the evidence of the expert witnesses. Such expert evidence as was rejected at the hearing was in our opinion merely cumulative and would not have affected the result.

It has been repeatedly held that the opinion of an expert necessarily made upon, in part at least, surmise and conjectures will not stand against proof of an actual fact. Caldwell Sugars v. United States, Ct. Cl., 54 F.Supp. 544; Slack Bros. v. Commissioner, 5 Cir., 141 F.2d 261.

The burden was upon the taxpayer to show that it had absorbed the tax. The fact that its statutory margin was greater during the taxing period than before and after; that it made a comparatively greater profit during the taxing period than before or after; that it notified its customers that in billing to them for the price of the peanuts purchased the tax was included, showing that it was passed on to the customer; that it increased, on the effective date of the tax, the sales prices of its peanuts by an amount substantially equal to the tax and immediately after the tax was declared unconstitutional reduced the sales prices of its peanuts by an amount substantially equal to the amount of the tax and that in its accounting it carried the processing tax as an item of cost the same as the cost of peanuts, and other costs, all go to show that the taxpayer absorbed no part of the processing tax for which it claims a refund.

The direct evidence in the case was much more weighty than the offered evidence relied upon by the taxpayer and the findings of fact by the Tax Court, which are binding on us, were not only based upon substantial facts but were supported by the evidence. The decision of the Tax Court was correct and is accordingly affirmed.

Affirmed.