**PUTNAM KNITTING CO. v. UNITED STATES.**

No. 45453.

*Court of Claims.*

Jan. 8, 1945.

Emil K. Ellis, of New York City, for plaintiffs.

Reid & Priest, of New York City, for Electric Bond & Share Co.

Simpson, Thacher & Bartlett, of New York City, for Hill, Hoffman and Sanders.

White & Case, of New York City, for United Gas Corporation.

John F. Davis, Sol., Roger S. Foster, Counsel, and Sidney H. Willner, Atty., all of Philadelphia, Pa., for Securities & Exchange Commission.

358

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers and Betty Cochran Stockvis, both of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff, a manufacturer of wash-cloths, baby blankets, etc., was taxed, by Section 16(a) (1) of the Agricultural Adjustment Act, 48 Stat. 31, 7 U.S.C.A. §

616(a) (1), a certain amount per pound on the stocks of cotton goods which it had on hand on August 1, 1933. This tax was known as a floor stocks tax. It amounted to $8,173.24, which the plaintiff paid.

The Supreme Court of the United States, on January 6, 1936, held the Agricultural Adjustment Act unconstitutional,[1] and the plaintiff filed a claim for refund of the $8,173.24. But Congress, by Section 902 of the Revenue Act of 1936, 7 U.S.C.A. § 644, placed restrictions upon the recovery of a tax paid under the Agricultural Adjustment Act, because it thought that in many cases the one who paid the tax would have passed it on, in the sale price, to those who purchased his product, and that if he recovered the tax from the Government he would not merely be recovering the amount of an illegal levy collected from him, but would be unjustly enriching himself by obtaining payment a second time for an expenditure for which his customers had already reimbursed him.

The applicable part of Section 902 is as follows:

"Sec. 902. Conditions on allowance of refunds

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; * * *."

The plaintiff's claim for refund was rejected by the Commissioner of Internal Revenue, but a refund of $256.93 was later made, leaving a balance of $7,916.31 unrefunded.

■ As we have said, the floor stocks tax was paid on goods on hand August 1, 1933. On that day the plaintiff began to add to its sales invoices to customers as a separately stated item, the amount of the floor stocks tax. How long the practice of separate billing was continued, does not appear from the evidence. Its advertised price list, effective August 1, contained a statement: "Floor tax included in all the above prices." This price list continued in effect until November 1, 1933, when a new price list, not containing the quoted statement, was issued. The plaintiff concedes that, on the goods which were sold before November 1, 1933, it recovered the tax from its customers, and must reduce its claim here. There is, however, a controversy as to whether the amount so recovered was $2,058.89, as claimed by the plaintiff, or $2,638.85 as claimed by the Government.

The plaintiff's ultimate claim, then, is to recover the amount of the tax which it paid on such of its goods on hand August 1, 1933, as were sold by it on and after November 1, 1933. As to these, it urges, it did not receive, in its sales price to its customers, the amount of the tax. The possible significance of the November 1 date seems to be that the new advertised price list in effect as of that date made no mention of the floor stocks tax, and quoted new prices which were, on many items, lower than those on the previous list.

■ As to the omission of mention of the tax on the November 1 price list, that, in itself proves nothing as to whether the tax was passed on after that date, as the plaintiff concedes that it was before. Prospective purchasers would have had no interest in the presence or absence of such a statement, since in any event they would not have become liable for the tax even if the plaintiff had not paid it. Their only interest would have been in the price, re-

[1] United States v. Butler et al., 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

gardless of how the plaintiff had arrived at it. The plaintiff's purpose, during the August 1–November 1 period, in mentioning the floor stocks tax, must have been to justify its prices and show its customers at least one of the items which made up its costs.

■ As we have said, the November 1 price list quoted lower prices on some items and the same or higher prices on others. The reductions did not correspond with the amount of the tax on the reduced items, and were evidently made in response to market conditions. The reduction of prices does not, therefore, in itself constitute proof that the tax was not recovered from purchasers.

■ The real basis for the plaintiff's claim that it bore the burden of the tax is that, during the period in question, it lost money on its sales. It urges that it could not possibly have received, in the prices it charged its customers, the amount of the tax, when what it received was not even enough to pay its manufacturing and selling costs. There is a certain plausibility about this argument, but it is not, upon examination, sound. The tax was one element of cost to which every competitor of the plaintiff was uniformly subject. The selling price of the product of all these competitors would, therefore, naturally tend toward a level higher, by the amount of the tax, than they had been before. A high cost manufacturer who had, before the tax was imposed, lost money or made an inadequate profit, could, in general, increase his prices by the amount of the tax and still retain his relative position in the market, losing money or making an inadequate profit as he had before. A low cost manufacturer who had been making large profits before could continue to do so, by raising his prices by the amount of the tax. And other manufacturers between these two extremes would, in general, retain their same relative positions in the market.

The plaintiff, during the six months ending December 31, 1933, lost $18,573.05. During one of those months, July, there was no floor stocks tax. During three of them, August, September and October, it concededly passed to its customers, in its sales prices, the amount of the tax attributable to the goods sold during those months. For the months of January, February and March, 1934, during which time it claims that it sold the rest of the stocks which had been on hand August 1, 1933, and which were, therefore, taxed, it lost $8,781.21. Its loss was, therefore, at a somewhat lower rate during these months than during the 1933 months.

■ On the basis of these facts, we have no idea what were the reasons why the plaintiff did not get enough for its product, including its taxed product, to reimburse it for what it spent for manufacture, selling, and taxes. We likewise do not know whether the prices which the plaintiff did receive were, though inadequate to cover its costs, higher by the amount of the tax than they would have been if the tax, applicable to the plaintiff and its competitors, had not been imposed. If the latter is true, and Section 902 quoted above creates, in effect, a presumption that it is true, then the plaintiff cannot recover. And the plaintiff has the burden, a difficult one to bear, of negativing, by proof, the presumed situation.

The petition will be dismissed.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.