LOUISVILLE PROVISION CO. v. COMMISSIONER OF INTERNAL REVENUE.

COMMISSIONER OF INTERNAL REVENUE v. LOUISVILLE PROVISION CO.

Nos. 9940, 9941.

Circuit Court of Appeals, Sixth Circuit.

Feb. 12, 1946.

Rehearing Denied May 28, 1946.

---

Charles I. Dawson, of Louisville, Ky. (Charles I. Dawson and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., on the brief), for petitioner and cross-respondent.

Leland T. Atherton, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Helen R. Carloss, and John F. Costelloe, all of Washington, D. C., on the brief), for respondent and cross-petitioner.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

These cases arise on petitions to review a decision of the Tax Court of the United States which determined a deficiency in unjust enrichment taxes imposed under § 501(a) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 944, for the taxable year of Oct. 1, 1934, to Oct. 1, 1935. The Commissioner had theretofore determined a deficiency of $56,692.64, together with a penalty of $14,173.16. The Tax Court, after exhaustive hearings, reduced the deficiency to $38,840.41, together with a penalty of $9,710.10.

The Commissioner attacks the action of the Tax Court in holding that an item of attorneys' fees was taxable as an accrued expense, thereby reducing the deficiency theretofore determined, while the taxpayer contends that the decision of the Tax Court is not supported by any evidence and that serious error of law was committed.

The taxpayer, a Kentucky corporation, is engaged in the general packing house business in Louisville, Kentucky, purchasing and slaughtering cattle, sheep, calves and hogs, and purchasing pork, beef and other meat products from other packers. The pork and beef produced by the taxpayer from its own slaughtering is called own-slaughter pork and beef, and that purchased by it from other packers is called purchased pork and beef. Beef so purchased was sold in a fresh state, with the exception of that used in the manufacture of chili, corned beef and sausage. Veal and lamb were sold without processing. The tax to which the taxpayer was subject was a processing tax on pork and pork products arising under the taxing provisions of the Agricultural Adjustment Act, Title 7 U.S.C. § 601 et seq., 7 U.S.C.A. § 601 et seq., enacted, May 12, 1933, and Regulations issued thereunder. Both the taxpayer's own-slaughter pork and its purchased pork were sold either in a fresh state or after further processing into sausage, cured, smoked, or cooked meats. Fresh hams purchased by the taxpayer were commingled with fresh hams from taxpayer's own-slaughter hogs, and 99% of taxpayer's fresh hams, whether purchased or own-slaughter, were processed into smoked hams. Practically all the bacon cuts were processed into bacon and 85% to 90% of the shoulders of hogs were cured and smoked. Sausage was manufactured partly from the taxpayer's own-slaughter meats and partly from purchased meats. The sausage contained varying percentages of pork and beef, some of it being manufactured exclusively from pork. Hams

were boiled and baked, and chili, which is composed entirely of beef, was produced in the sausage department.

The Agricultural Adjustment Act imposed a processing tax upon certain basic agricultural commodities, including hogs. The statute [Title 7 U.S.C. § 609(d) (8), 7 U.S.C.A. § 609(d) (8)], provided that as to the processing of hogs, "the term 'processing' means any manufacturing or other processing involving a change in the form of the commodity or its preparation for distribution or use, as defined by regulations of the Secretary of Agriculture; and in prescribing such regulations the Secretary shall give due weight to the customs of the industry." In accordance with the statute, regulations were promulgated which govern this case.

The Tax Court overruled the Commissioner's determination as to a number of items which affected the net taxable profit calculated to have been made by the taxpayer during the taxable year, and thus reduced the tax, which was laid upon net income. § 501(a), Revenue Act of 1936. It held that the Commissioner erred (1) in crediting to authorized deductions rent received in the amount of $12,402.80 and allocating $6,672.90 thereof to own-slaughter pork and the remainder to other departments of the taxpayer; (2) in allocating $899.18 of bad debts to own-slaughter pork and using it to reduce the amount of expenses deducted; (3) in refusing to allow the deduction of some $18,000 of attorneys' fees discussed below. The Tax Court also held that the Commissioner erred in his method of computing sales of own-slaughter and purchased pork. It decided that the computations of gross sales of purchased pork should be based upon live weight rather than upon cost, together with an arbitrary write-up of one and one-half cents a pound, which was the Commissioner's yardstick. Applying this method of computation, the Tax Court concluded that $222,300.59 was the amount realized from the sale of articles containing purchased pork, being some $43,000.00 more than the amount for the same item computed by the Commissioner and to that extent to the advantage of the taxpayer, for the Tax Court did not impose the tax upon net income from purchased pork transactions.

The Commissioner does not attack the Tax Court's reversal of his determination on these items with exception of that as to attorneys' fees; but the taxpayer, emphasizing the errors made by the Commissioner, contends that his action in assessing the deficiency was so arbitrary, inaccurate and unjust as to render the assessment void in its entirety, and to deprive it and each of the findings and computations made in arriving at the deficiency of the usual prima facie presumption of correctness. This contention raises the most serious legal problem in the case, for the Tax Court, while finding that certain of the computations were inaccurate, nevertheless gave to other important findings of the Commissioner the full advantage of the prima facie presumption.

The taxpayer attacks as arbitrary the failure of the Commissioner to ascertain an average margin by which to test the extent to which the taxpayer is alleged to have shifted the burden of the tax.[1] The

---

[1] Section 501, Revenue Act of 1936.

"(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

"(1) A tax equal to 80 per centum of that portion of the net income from the sale of articles with respect to which a Federal excise tax was imposed on such person but not paid which is attributable to shifting to others to any extent the burden of such Federal excise tax and which does not exceed such person's net income for the entire taxable year from the sale of articles with respect to which such Federal excise tax was imposed.

*  *  *  *  *  *  *  *

"(e) For the purposes of subsection (a) (1), (2), and (3), the extent to which the taxpayer shifted to others the burden of a Federal excise tax shall be presumed to be an amount computed as follows:

"(1) From the selling price of the articles there shall be deducted the sum of (A) the cost of such articles plus (B) the average margin with respect to the quantity involved; or

"(2) If the taxpayer so elects by filing his return on such basis, from the aggregate selling price of all articles with respect to which such Federal excise tax was imposed and which were sold by him during the taxable year (computed without deduction of reimbursement to purchasers with respect to such Federal excise tax) there shall be deducted the aggregate cost of such articles, and the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise tax was imposed. The excess of

taxpayer was not in business during the six years preceding the imposition of the federal excise tax, and therefore it urges that the Commissioner, in order to have any basis for holding that the taxpayer shifted the tax, should have determined under § 501(e) (2) (f) (1) printed in the footnote, the average margin of respective concerns engaged in a similar business and similarly circumstanced. The Commissioner made no such determination, and the taxpayer did not request him to do so.

█ We think the Tax Court ruled correctly that the failure of the Commissioner in this regard was not arbitrary. It is not shown that the taxpayer had made the return required under § 503(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, page 948, and Regulations 95, Art. 27 (6), nor elected to rely on the provisions of § 501(e) (2) by filing its return on the basis required by that paragraph. Since the taxpayer thus failed to avail itself of its statutory right to notify the Commissioner that it expected to rely upon the average margin provisions of the statute, it cannot now complain of the Commissioner's failure to act. Also § 501(f) requires the average margin "when necessary for a fair comparison." The Tax Court correctly declared that in the absence of proof that data for a six-year period was in fact necessary for comparison, a finding of arbitrariness would be unwarranted. Cf. Lee Wilson & Co. v. Commissioner, 8 Cir., 123 F.2d 232.

█ Nor did the Commissioner act arbitrarily in ruling that the taxpayer shifted the tax. It is contended that the record contains no evidence whatever to this effect. However, the taxpayer entered the processing tax on its books as part of the cost of the hogs. While it did not bill the tax separately to its customers, nor accept nor contract for a refund in the amount of the tax, its president testified that it en-

deavored in its business to recover all costs, including federal taxes. The Act contemplated that the consuming public should pay the tax. United States v. Poindexter & Sons Merchandise Co., 8 Cir., 128 F.2d 992, 995, certiorari denied, 317 U.S. 677, 63 S.Ct. 159, 87 L.Ed. 543. The fact that the taxpayer included it in costs, which it endeavored to recover in its prices, creates an inference that the tax was shifted. Colonial Milling Co. v. Commissioner, 6 Cir., 132 F.2d 505, certiorari denied, 318 U. S. 780, 63 S.Ct. 857, 87 L.Ed. 1148. The taxpayer did not satisfactorily rebut this inference.

█ The errors corrected by the Tax Court did not invalidate the authenticity of the Commissioner's other detailed computations, nor deprive him as to other items of the advantage of the presumption of accuracy and validity. The Commissioner's computations are in many respects concededly accurate, for as to his major calculations, such as the amount of sales of fresh pork, smoked hams, smoked meats, etc., the taxpayer's accountant testified that they were correct.

█ The taxpayer particularly attacks the action of the Tax Court in giving weight to the presumption when it adopted as the cost of beef used in the sausage department the Commissioner's figure of some $42,000 as against the taxpayer's figure of some $52,000. Since the taxpayer's figure was based not upon actual cost, which was nowhere shown on its books, but upon Chicago prices rather than local Louisville prices, it was not error to adopt the lower calculation.

The taxpayer also vigorously objects to the fact that the Tax Court gave weight to the presumption in adopting the Commissioner's allocation of expense deductions aggregating $253,684, to own-slaughter pork. The taxpayer's evidence on this

---

such margin per unit over the average margin (computed for the same unit) shall be multiplied by the number of such units represented by the articles with respect to which the computation is being made;
* * *.

"(f) As used in this section—

"(1) The term 'margin' means the difference between the selling price of articles and the cost thereof, and the term 'average margin' means the average difference between the selling price and the cost of similar articles sold by the taxpayer during his six taxable years preceding the ini-

tial imposition of the Federal excise tax in question, except that if during any part of such six-year period the taxpayer was not in business, or if his records for any part of such period are so inadequate as not to furnish satisfactory data, the average margin of the taxpayer for such part of such period shall, when necessary for a fair comparison, be deemed to be the average margin, as determined by the Commissioner, of representative concerns engaged in a similar business and similarly circumstanced."

point is unsatisfactory. It admitted that any allocation must be approximate and that many of its totals were not allocated among the various departments. In brief, the errors of the Commissioner were corrected by the Tax Court within the injunction of the Supreme Court in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. The points as to which the Commissioner's determination was wrong were so separate and distinct from the two items in question here that they do not compel a conclusion that these totals were wrongfully computed.

Finally, it is urged that the deficiency as determined by the Tax Court is not supported by any substantial evidence. The taxpayer lists the overstatement of five items aggregating $122,565.63. Of these the Tax Court corrected four items substantially to the advantage of the taxpayer; but it still contends that the income from own-slaughter pork is overstated by over $100,000.00. This item, the taxpayer claims, was overstated, due to the fact that the Commissioner left in the net income the sales value attributable to the beef in sausage, and that the Tax Court did not correct this. It contends that the Commissioner, in arriving at the net taxable income, arbitrarily overstated the gross income from own-slaughter pork and arbitrarily understated the deductions therefrom, unfairly computing net loss, and that the error was not corrected by the Tax Court.

We think Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248, has peculiar application to this case. The Tax Court, aided by its staff of expert accountants, gave long and careful consideration to this case. Its detailed and well-considered opinion deals with every important factual aspect of the controversy. It is not here material whether some other inference might fairly be drawn from the facts. Boehn v. Commissioner, 66 S.Ct. 120; Commissioner v. Scottish American Co., 323 U.S. 119, 65 S.Ct. 169. We have jurisdiction only to decide whether the ruling of the Tax Court presents any clear-cut mistake of law. Examining the record to determine whether the findings are supported by any evidence, we conclude not only that substantial evidence exists, but that as to most of the items controverted there is ample evidence.

The burden was on the taxpayer to show that the Commissioner's determinations on the points here at issue were incorrect, and it has not borne this burden. It had to show the beef content of the sausage items, and this it has not done. In fact it appears that the pork content in sausage was substantially higher than that testified by the taxpayer's accountant. The taxpayer asserted that the beef content in sausage had a sales value of over $118,000.00; but this is not demonstrated. Typical of the gaps in appellant's figures is the fact that the item of "Meats from other packers," which is listed in the account of the sausage department, totaling $39,511, in no way indicates how much of the meat so purchased was beef and how much pork, nor does the taxpayer's accountant give this information.

Also, under the applicable regulations this tax should have been laid not only upon own-slaughter pork, but upon purchased pork. The amount of $222,300.59, calculated by the Tax Court to be the amount realized from the sale of articles containing purchased pork should have been included in its computation of the net taxable income.

Section 609(a) of the Agricultural Adjustment Act (Title 7 U.S.C., 7 U.S.C.A.), provided that the processing tax shall be levied, assessed and collected upon the first domestic processing of the commodity. Under paragraph (d) (8) of the section, "processing" means "any manufacturing or other processing involving a change in the form of the commodity or its preparation for distribution or use, as defined by regulations of the Secretary of Agriculture. * * *" Section 501(f) (2) of the Revenue Act of 1936 provided that the term "cost" means in the case of articles manufactured or produced by the taxpayer the cost to the taxpayer of "materials entering into the articles." It is true that the regulations promulgated on October 18, 1933, defined the term "first domestic processing" as being "the slaughtering of hogs for market." However, subsequent regulations issued by the Secretary of Agriculture on October 29, 1934, and effective November 1, 1934, thus being in force for 364 days of the taxable year involved herein, provided:

"The term 'first domestic processing' means the slaughter of hogs for market; except that (a) in the case of a producer or feeder who shall distribute the carcass or any edible hog product directly to a consumer, the term 'first processing' means the preparation of the carcass or any edible hog

product for sale, transfer or exchange or for use by the consumer, and only the edible product or products so sold, transferred, exchanged or distributed by or for the producer or feeder shall be deemed to have been processed, and (b) in the case of a producer or feeder who shall sell, transfer or exchange any carcass or edible hog product (1) to any person engaged in reselling, rehandling, cutting, trimming, rendering, or otherwise preparing such products for market (including, but not limited to, retailers, wholesalers, distributors, butchers, packers, factors, or commission merchants), or (2) to any restaurant, hotel, club, hospital, institution, or establishment of similar kind or character, the term 'first domestic processing' means the initial act of such person, restaurant, hotel, club, hospital, institution, or establishment which involves the preparation of the carcass or any edible hog product for further distribution or use."

These regulations were not cited nor mentioned in the record, nor at the hearing in this court.

Under the express requirement of the above regulations not only was the net income from the sale of own-slaughter hogs taxable, but also the net income from the curing and smoking of hams and bacon and other pork products and the preparation of sausage, whether made from own-slaughter pork or purchased pork. The taxpayer was not only a producer which slaughtered its own hogs; it also "engaged in reselling, rehandling, cutting, trimming, rendering, or otherwise preparing" edible hog products which it had purchased from other producers. The first domestic processing upon which the processing tax was to be levied, therefore, included not only the slaughter of hogs for market, but also taxpayer's initial acts in preparing purchased pork for further distribution or use. The tax should have been laid upon the taxpayer's edible products, containing purchased pork as well as own-slaughter pork. This would add to the net income received from the sale of articles containing own-slaughter pork such an increased amount that the finding of deficiency may well err on the side of being too small rather than too large. Since the Commissioner specifically waived any question of error in this calculation, however, we do not remand the case for further computation, but simply affirm upon this phase of the matter.

The Tax Court erred in its determination that a deduction should be allowed the taxpayer for legal fees incurred in the suit instituted to contest the constitutionality of the Agricultural Adjustment Act. The oral contract for the fee was contingent upon the success of the suit. The Tax Court reduced the deduction of $20,000 claimed by the taxpayer and limited it to about $18,000, this being the amount of the fee based upon taxes imposed during the taxable year. The Commissioner had allowed this same fee as a deduction from net income tax for 1935, but he refused to allow it as a deduction in determining the income subject to the unjust enrichment tax, upon the ground that the item was not accruable within the taxable year.

Section 501(c) (1) of the Revenue Act of 1936 allows a deduction from the gross income from sales of articles with respect to which the processing tax was imposed but not paid, of "the allocable portion of the deductions from gross income for the taxable year which are allowable under the applicable Revenue Act."

The Agricultural Adjustment Act was held invalid on Jan. 6, 1936, and the fee was paid the same month. The item was not accrued on the taxpayer's books in 1935. The Tax Court seemed to think that since the agreement was definite in amount, being for 20% of the processing taxes saved if the law should be declared unconstitutional, and since the services were performed during the taxable year and the processing taxes were fixed in amount for the year, that this was a business expense properly accrued as to processing taxes incurred for 1935. We think that the fee could not be deducted as an accrued business expense because the taxpayer's liability did not become settled and the amount was uncertain during the year 1935. The taxpayer recognized the contingency of the item by not accruing it on its books. A taxpayer "may not accrue an expense the amount of which is unsettled or the liability for which is contingent * * *." Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 597, 88 L.Ed. 725; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270; Commissioner v. Blaine, Mackay, Lee Co., 3 Cir., 141 F. 2d 201.

The case is remanded to the Tax Court with instructions to disallow the deduction

for legal fees. In all other respects the order is affirmed.

On Petition for Rehearing.

In its petition for rehearing the petitioner urges that our statement in the opinion that the beef content of the sausage items is not shown in the record is incorrect. The beef content was calculated by petitioner from the figures given by Mitchell, petitioner's accountant, who admitted that his figures were based largely on allocation, and that he could not testify from his books as to any shipments of purchased pork for he could not identify them. Mitchell's calculation of the beef content in sausage depends partly upon his calculation of the item of purchased pork. He estimated that the amount of beef in sausage was 60% of the total, and of pork 40%. This is disputed by nine refund claims for credit on the processing tax, executed under oath by Wernke, petitioner's president. These claims stated the pork content of the various items as ranging from 43% to 100%. Only one had less than 40% pork content. All the other fourteen items had 40% or greater of pork, the majority of them ranging from 43% to 100%.

Petitioner's calculation of the value of the beef content in sausage is contradicted at important points by its own evidence. While the principal materials in sausage are pork and beef, the petitioner's president and Mitchell, the accountant, testified that sausage contains various other articles besides pork and beef. Of the ingredients in forms of sausage other than pork sausage Mitchell says in effect that from 10% to 16% are other materials than beef or pork. For example, he says: "Of the ingredients in Southern Star bologna 83.77 were materials while the rest of it was a gain in weight due to the addition of spices and other ingredients." He agrees, although with some evasiveness, in answer to a question, that as to all but pure pork sausage there is "this gain in weight" due to the addition of other ingredients and moisture, amounting "apparently" to more than 10% average gain in the finished weight. In calculating the weight of "other materials than own-slaughter pork" in sausage, Mitchell stated that the sausage from all other materials was that produced "from the beef transferred and from the beef purchased, and from the pork that we purchased." Petitioner relies on this statement to support the conclusion which it claims is uncontradicted, that there is nothing but beef and pork in this sausage. But as shown above, there is approximately a 10% gain in the finished weight which clearly cannot be attributed to beef or pork, and any calculation of the value of the beef content of sausage which ignores the other ingredients is substantially incorrect.

Also petitioner's estimate of the sales value of the beef content in sausage is increased considerably by the erroneous assumption that all kinds of sausage have the same sales value. Its figures here, as elsewhere, are calculated from premises which are assumed, but not shown to exist.

The petitioner vigorously attacks our conclusion that under the statutes and regulations the Tax Court should have taxed the processing of purchased pork as well as own-slaughter pork. The burden was on the petitioner to show that the determination of the Commissioner in this regard was incorrect. While the record shows that some of the pork is bought from packers, petitioner has carefully refrained from showing what these totals were. Nothing in the record establishes, as claimed in the brief, that all purchased pork came from packers.

If we are wrong in our conclusion that the regulations govern this case, we think that the applicable statutes required the taxing of certain products which were omitted by the taxing agents, and that petitioner therefore was not damaged by the Tax Court's decision. Section 609(d) (8), 7 U.S.C., 7 U.S.C.A. § 609(d) (8), defines processing as "any manufacturing or other processing involving a change in the form of the commodity or its preparation for distribution or use, as defined by regulations of the Secretary of Agriculture." Section 609(f), which further emphasizes this proposition, reads: "For the purposes of sections 608 to 619 of this title, processing shall be held to include manufacturing." Section 655, 7 US.C., 7 U.S.C.A. § 655, in defining the term "article," says that it means "the product which is obtained [from] further manufacture or by combination with other materials." This definition was recognized in the unjust enrichment

statute, for § 501(a) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 944, laid the tax upon "the net income from the sale of articles with respect to which a Federal excise tax was imposed" but not paid. Section 501(f) (2) of the Act, which defines the taxable costs of operation for the purpose of calculating the tax, states that the term "cost" means in the case of articles manufactured or produced by the taxpayer the cost to the petitioner of materials entering into the articles. Clearly sausage is an article manufactured by petitioner, and purchased pork is one of the materials entering into it. If its cost is deductible, net profit from the entire article is evidently intended to be taxable. As the Commissioner originally contended, the petitioner should have been taxed here upon the total net income from the sale of sausage, whether or not it was made from own-slaughter or from purchased pork.

The petition for rehearing is denied.