WILLIAMS et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 11294.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1946.

Rehearing Denied March 15, 1946.

548

C. J. Batter, of Washington, D. C., and R. E. Milling, Jr., of New Orleans, La., for petitioners.

Maryhelen Wigle and Helen R. Carloss, Sp. Assts. to the Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bur. Int. Rev., and Raymond F. Brown and Royal E. Maiden, Jr., Sp. Attys., Bur. Int. Rev., all of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

These two proceedings are for the recovery of processing taxes allegedly paid under the Agricultural Adjustment Act.[1] They were originally filed with the United States Processing Tax Board of Review, and by it consolidated for trial. Afterwards, under Section 510 of the Revenue Act of 1942, 26 U.S.C.A. Int.Rev.Acts, they were transferred to the Tax Court, which denied both claims.

Sterling Sugars, Inc., was the processing corporation, and paid the entire amount of the taxes here sought to be recovered, viz., $651,825.27. Sterling Sugars Sales Corporation acted merely as the selling agent for the processing corporation. It was not a processor, and paid no part of the tax here involved. It apparently has no interest on which to base a claim, and it is admitted that the processing corporation is entitled to the benefit of any claim that may be established.

The Tax Court found as a fact, upon substantial evidence, that the margin of Sterling Sugars Inc., during the tax period, exceeded its margin during the computation period before and after the tax.[2] This left the burden of going forward with the evidence, as well as the burden of proof, where it started, i. e., upon the processor.[3]

Treating all marginal presumptions as inoperative, and looking to the statutory conditions for the allowance of refunds of processing taxes, it is prescribed that no such refund in any amount shall be allowed unless the claimant establishes that it bore

the burden of such amount and has not been relieved thereof, nor reimbursed therefor, nor shifted such burden, directly or indirectly.[4] The remaining question for decision is whether the Tax Court erred in holding that the petitioner failed to meet this burden.

The petitioner contends that, during the tax period, it sustained losses rather than made profits from the sale of sugar. The alleged existence of this fact was relied upon as proof of its contention that it absorbed the tax and bore the ultimate burden of it. The Tax Court was not convinced that petitioner sustained such losses as claimed; but it held that, even if such fact had been established, it would not suffice as proof that petitioner had borne the burden of the tax. We find no error in this ruling, because the petitioner might have sustained a loss notwithstanding the fact that it shifted the tax to its customers.

All of the sugar of the processing corporation was sold by Sterling Sugars Sales Corporation through independent brokers on a commission basis. The tax period of the processor ran from June 8, 1934, to October 31, 1935, inclusive; the period for the computation of margins ran from June 8, 1932, to June 7, 1934, inclusive, and included the six months from February to July, inclusive, 1936. A joint claim for refund signed by both corporations, marked "tentative return," was filed June 21, 1937, seeking refund of the exact amount above stated. Following this, the respondent received from the processing corporation a letter dated January 12, 1938, which stated in part as follows:

"The schedules enclosed show that the total Processing Tax paid on production was $652,503.50 and that the Processing Tax collected was $651,825.27, leaving a balance of $678.23 Processing Tax paid which was not collected from customers. Although our Claim on Form 79 No. F-1441 was in the amount of $652,503.50, the schedules reveal that the actual amount to be refunded under the claim is only $678.23.

"If additional statements are required, won't you kindly so advise us and at the same time grant us an extension of ninety

---

[1] 48 Stat. 31, amended, 48 Stat. 670, 7 U.S.C.A. § 601 et seq.

[2] See Sec. 907 of the Revenue Act of 1936, 7 U.S.C.A. § 649.

[3] Webre Steib Co. v. Commissioner, 324 U.S. 164, 171, 65 S.Ct. 578.

[4] 7 U.S.C.A. § 644.

days within which to compile and forward the statements desired."

On March 22, 1938, the processor and Sterling Sugars Sales Corporation received from the respondent as a refund on their adjusted joint claim the sum of $678.23. On December 27, 1939, a joint claim for refund marked "final" was filed by the petitioners seeking refund of processing taxes under the Agricultural Adjustment Act, as amended, in the sum of $652,424.05. The identical processing taxes and the identical quantities of sugar cane and raw sugar are involved in the foregoing claims.

Prior to the date of the imposition of the processing tax on sugar, the processor revised its contract forms covering its sales of sugar so as to include a clause providing that in the event the tax was imposed the price of all sugar at that time undelivered should be increased to 107½ per cent of the amount of such tax if computed upon a poundage basis, and if not so determinable, then the price should be increased by the amount by which the seller's cost per pound of refined sugar thereafter delivered would be increased by reason of such tax. This clause continued in use on both contracts and invoices of the processor throughout the tax period.

In May, 1934, the processor notified its various sales agents to explain to their customers that all purchases of sugar made from it after June 8, 1934, would carry the tax to be imposed that day.

The processing tax on sugar at the rate of 53½¢ per 100 pounds of refined sugar was made effective June 8, 1934, and on all the markets for sugar the selling price was immediately, on that day, increased by 55¢ per 100 pounds. This increase was because of the imposition on that date of the processing tax and, when the customary trade discount of 2 per cent had been allowed on the invoice price, permitted a tax recoupment slightly in excess of the amount of the tax. The processor, together with other producers of sugar, increased on this date its prices to customers by the amount of 55¢ per 100 pounds, and the fluctuation of sugar prices on the market after that date was from the higher level thus set.

On August 8, 1934, the processor, through its assistant general manager, wrote a letter to the Acting Collector of Internal Revenue at New Orleans, which stated as follows:

"We have previously reported our production of sugar during the period of June 8th–July 7th, inclusive. You will find enclosed herewith our report of production from the first moment of July 8th to date.

"As was necessary on our other reports we request that we be allowed to withhold payment of processing tax for the full limit of the law, i. e., 180 days, unless the sugar is sold and the tax collected prior to that time.

"We haven't the necessary funds to advance this money to our Government and can only pay this tax when it has been collected from our customers."

In another letter by the processor to the U. S. Collector at New Orleans, the following statement was made: "Should your Washington office demand payment to you each month as processing is reported we would be in the position of advancing money to our Government which had not as yet been collected for their account and would impose upon us an undue hardship."

On August 31, 1936, the petitioner, Sterling Sugars Sales Corporation, as agent for the processor, instructed one of its sales agents in the field to advise customers, who requested credit upon invoice prices of the amount of the tax, that it had no responsibility to them to refund the tax which they had paid by its inclusion in the price charged, since the amount of the tax thus paid had been remitted by the processor to the Government, but that if such customers could show that they had not, in reselling the sugar, passed on the amount of this tax to their customers, they should file claim with the Federal Government for its refund.

On February 19, 1936, the processor advised the Journal of Commerce and Commercial of New York that it was issuing affidavits to its customers in order that they might file claims for refund of processing taxes paid by it with respect to sugar purchased by them.

Upon the above facts, as found by it, the Tax Court held that no part of the processing taxes claimed was borne by the processor, but that the entire amount was shifted to its customers. The court, therefore, held that neither of the petitioners was entitled to a refund of any portion of the processing taxes paid. Its decision is

Affirmed.