REPUBLIC COTTON MILLS v. COMMIS-
SIONER OF INTERNAL REVENUE.
No. 5681.

Circuit Court of Appeals, Fourth Circuit.

April 1, 1948.

SOPER, Circuit Judge, dissenting in part.

John W. Townsend and J. Craig Peacock, both of Washington, D. C., for petitioner.

Newton K. Fox, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The claim of Republic Cotton Mills for refund of processing taxes on cotton paid

by it on the output of three mills in South Carolina under the unconstitutional Agricultural Adjustment Act of May 12, 1933, 7 U.S.C.A. § 601 et seq., was considered by us upon an earlier appeal. We held in our opinion, 4 Cir., 147 F.2d 278, that the decision of the Tax Court adverse to the taxpayer should be reversed because the court had combined the operations of all three mills, and had reached its conclusion that the taxpayer passed on the tax by comparing the statutory margins in the tax period with the statutory margins in the base period on the business as a whole. See Sections 901 to 917 of the Revenue Act of 1936, 7 U.S.C.A. § 623 note and §§ 644 to 659 where Congress prohibited any refund unless the taxpayer clearly established that it bore the burden of the tax, and certain presumptions to be drawn from the evidence were laid down. Since Mill 3 operated separately from the others, and engaged in the manufacture of specialties by different processes, and sold them in different markets, we held that the margins for Mill 3 should be separately computed and compared and we therefore remanded the case for further proceedings. They have now been had and the Tax Court has again found against the claimant both as to Mills 1 and 2, and as to Mill 3.

## Mills 1 and 2.

■ The evidence with respect to Mills 1 and 2 shows that the average margin per unit for the tax period, that is, the difference between the sales price of the manufactured article and the cost of the cotton plus the tax, exceeded the margin per unit for the base period by 5.0524 cents. Hence, under Section 907(a), the presumption was that the claimant did not bear the burden of any portion of the tax. It is true that the claimant's cost of production (other than differences in cost of commodity processed which are reflected in the computation of the statutory margins) was 3.09322 cents per pound higher during the tax period than in the base period, but even if the margins are adjusted to account for this increase in the claimant's expenses, the margin for the tax period still exceeds the margin for the base period.

■ The claimant argues that the statutory margins in this case are misleading and should be accorded no weight. The basis for this contention is that the last five months of 1931 and all of 1932 constituted a part of the most unprofitable period in the recent history of the textile industry, and that the inclusion of these months in the base period (pursuant to the statutory mandate) rendered the figures obtained unrepresentative. It is not necessary to inquire into the validity or effect of this contention in other circumstances, because the evidence here showed that even if these months were excluded from the base period, the average margin for the tax period would still exceed the margin for the revised base period by 3.92446 cents.

■ Even if it be assumed, however, that the statutory presumption adverse to the claimant should be disregarded, the burden of proof nonetheless remained with it to establish the actual extent to which it had borne the burden of the tax. It undertook to carry this burden in the following manner: It showed that it had paid a total tax on cotton processed at Mills 1 and 2 in the amount of $346,583.37. It admitted that it shifted the burden of the tax to the extent of $9,280.97, representing the tax collected under tax-to-be-added clauses in contracts executed prior to August 1, 1933, which leaves $337,302.40. The claimant then showed that the prices which it received on all its sales at Mills 1 and 2 during the tax period exceeded its price levels of July 31, 1933, (the day preceding the effective date of the tax) by only $38,852.06. It is willing that this excess should be attributed to a shifting of the tax, but claims that it is entitled to a refund for the balance, i. e., $298,450.34. Indeed, it is even argued that this is a conservative estimate because costs of production increased during the tax period, so that part of the excess may be attributed to increased expenses rather than to a shifting of the tax.

■ We think, however, that there are two persuasive reasons why the finality which is claimed for it may not be extended to this so-called "comparison of prices" test. In the first place, were we to accept the results of this test as conclusive, our ac-

tion would have the effect of substituting the month of July, 1933, for the base period prescribed in Section 907, and then computing margins on this new basis. But Congress, in defining the base period, has provided that it should consist of the twenty-four months preceding the imposition of the tax and the six months, February to July, 1936, inclusive, and not of the month or day immediately preceding the imposition of the tax. The Tax Court, in determining the actual extent to which the tax has been shifted, may in some circumstances consider the prices, costs and other conditions obtaining during intervals less than the entire base period, or even during months outside that period, see Webre Steib Co. v. Commissioner, 324 U.S. 164, 65 S.Ct. 578, 89 L. Ed. 819, but we have no authority to require it in the exercise of its duty as the finder of facts to restrict itself, for the purpose of comparison, to the economic conditions and other facts present during any specific interval or period of time within the base period.

The second fallacy inherent in the "comparison of prices" test suggested in this case is that it proceeds on the assumption that the claimant would have charged and received its July 31, 1933, prices during the tax period even absent the tax. But there is no sound basis for this assumption. The evidence showed that July, 1933, was an extremely profitable month, at least as far as the tax and base periods are concerned. On the other hand, the evidence showed that a buyers' market obtained throughout most of the tax period. Despite this, and even after paying the tax, the claimant realized a profit on its operations at Mills 1 and 2 during the tax period. In the light of these facts, it is certainly a fair if not inescapable inference that the claimant, had it not been required to pay the tax, would have sold its goods during the tax period at prices lower than those prevailing on July 31, 1933. Perhaps the reduction would not have been equal to the amount claimed by it on this appeal, but the mere fact that there would have been a reduction from the July 31, 1933, level means that the application of the "comparison of prices" test would yield a result which would be erroneous to the extent of the reduction. Since the mathema-

tical application of this test would be erroneous, and inasmuch as the claimant adduced no evidence which could reasonably be said to establish that it had borne the burden of the tax in a lower amount, it follows that it must fail with respect to Mills 1 and 2 as the burden was on it to show the actual extent to which it had carried the tax.

▮ We have carefully considered the authorities relied on by the claimant in this connection, and we think it is sufficient to observe that we find in these decisions nothing inconsistent with the conclusion we have reached herein. Nor does our present decision conflict with our opinion on the prior appeal. At that time we merely directed the Tax Court to consider and weigh the evidence which we have discussed. The Tax Court has done so, and has reached the conclusion that the claimant has not established the actual extent, if any, to which it bore the burden of the tax. We think this finding has substantial support in the evidence.

### Mill 3.

At Mill 3, as has been indicated, the claimant manufactured fine goods and specialties. It produced, at various times during the tax and base periods, an all-cotton cloth, a cloth of mixed cotton and rayon, a cloth of mixed cotton and silk, an all-rayon cloth, and, to a small degree, a mixed silk and rayon cloth. Virtually the entire output of Mill 3 was specially styled.

The total tax paid by the claimant with respect to cotton processed at Mill 3 was $88,810.97. It admits that it shifted the tax to the extent of $6,722.43, but claims that it is entitled to a refund of the balance, i. e., $82,088.54.

As to Mill 3, the statutory margin for the tax period was 7.09479 cents per pound lower than for the base period. However, the claimant's cost of production during the tax period was lower than its cost of production during the base period. When the statutory margin during the tax period was adjusted to reflect this saving in the cost of production, the margin for the base period exceeded the margin for the tax period by 4.041273 cents. Even at these adjusted figures, however, the difference between the

margins tended to show that the taxpayer bore the burden of the tax in the amount of $85,454.60, which is in excess of the sum claimed.

■ The evidence upon which the Tax Court based its finding that the claimant shifted the entire burden of the tax with respect to Mill 3 may be summarized as follows: For several months prior to the effective date of the tax, the claimant's contracts carried a so-called tax-to-be-added clause. This clause provided that the buyer agreed to add to the contract price the amount which the vendor might be required to pay to the United States with respect to the particular transaction or any portion thereof. This clause was generally used in the industry at that time because the rate of the tax was as yet unknown and other uncertainties also existed. The claimant collected $6,722.43 from its vendees as the tax which it was required to pay on deliveries made after August 1, 1933, the effective date of the tax, under contracts executed prior to that day. It does not seek to recover this amount.

In respect to contracts executed after August 1, 1933, the claimant adopted the recommendations of the Association of Cotton Textile Merchants of New York and, pursuant thereto, discontinued the use of the tax-to-be-added clause and thereafter quoted and made sales at prices which were represented as including the tax. Its contracts also contained clauses whereby prices on undelivered portions were subject to adjustment in the event of an increase or decrease in the rate of the tax. There was also evidence that the claimant agreed to and did make refunds following the declaration of the unconstitutionality of the tax and that it modified prices on future deliveries accordingly. Finally, there was testimony that the claimant took into consideration the tax, along with its other costs of production, in quoting and fixing prices, and admittedly it desired to shift the burden of the tax to its consumers.

We think the Tax Court correctly held that this evidence rebutted the statutory presumption favorable to the claimant. The claimant engaged in virtually all, if not all, the practices enumerated in Section 907(e) (2) and defined in Section 907(e) as competent proof for the purpose of rebutting the presumption established by Section 907(a). In fact, as was stated in Webre Steib Co. v. Commissioner, 324 U.S. 164, 172, 65 S.Ct. 578, 89 L.Ed. 819, this evidence not only permitted but required a holding that the presumption had been rebutted. It is certainly a fair inference, in the absence of other proof, that these were the claimant's uniform practices unless as Section 907(e) (2) provides, it shows that its acts were caused by factors other than the processing tax, or that they did not represent its practice at other times.

■ This result, however, does not conclude the inquiry for, as the Supreme Court held in Webre Steib Co. v. Commissioner, 324 U.S. at pages 172, 174, 65 S.Ct. 578, the margin evidence remains in the case for whatever it is worth apart from the presumption. The effect of a rebuttal of the statutory presumption favorable to the claimant is to impose upon the Tax Court the duty to consider on all the evidence the actual extent to which the tax has been shifted as if the presumption had never been in the case, bearing in mind that the burden of proof is upon the claimant. In the performance of this duty, the Tax Court stressed the evidence which has satisfied us that the marginal presumption was rebutted; and then concluded the case against the taxpayer with the statement that the operation of the mill at a net loss did not impair the effect of the evidence that the prices at which the goods were sold were fixed with a view to recover the tax paid. It added that the operation of the mill at a loss during the tax period proved nothing with respect to shifting the tax burden, because the loss may well have been much greater if the petitioner had not passed on the tax to its customers. It cited Putnam Knitting Co. v. United States, 58 F.Supp. 357, 102 Ct.Cl. 805; Williams v. Commissioner, 5 Cir., 153 F.2d 547; see also in this connection Byars v. Commissioner, 5 Cir., 138 F.2d 513; Coates v. Commissioner, 5 Cir., 161 F.2d 671.

The majority of the Court is of opinion that the decision of the Tax Court should be affirmed as to Mill 3, as well as to Mills 1 and 2. The reasoning of the majority as

to Mill 3 is set out as follows by Parker, Circuit Judge:

■ "The margin evidence relied on to make a prima facie case for taxpayer having been rebutted by the evidence relied on by the Commissioner, no question of law remains, but the question as to whether the taxpayer has borne the burden of the tax or not is a pure question of fact with the burden of proof resting upon the taxpayer to satisfy the Tax Court that it did bear the burden. The fact that taxpayer sustained a loss was one of the facts to be weighed by the Tax Court along with the other facts in the case; but it was for that court, not the Circuit Court of Appeals, to say what, if any, weight it would attribute to that fact in passing upon the ultimate issue. There is nothing in the law that requires a holding that taxpayer because of the loss has borne any part of the tax. Timanus v. Com'r, 4 Cir., 156 F.2d 744, 747; see 167 F.2d 870, Greenwood Packing Plant v. Com'r, 4 Cir., 131 F.2d 815, 817; Byars v. Com'r, 5 Cir., 138 F.2d 513; Coates v. Com'r, 5 Cir., 161 F.2d 671. As said by Judge Hutcheson in the case last cited: 'At best this proof would be a ground for a finding that some of the tax was borne and not passed on, and the record showing no more, petitioner's burden would not be discharged.' In view of the facts found by the Tax Court, to which reference has already been made, that court was unquestionably justified in finding that the tax had been shifted. Franklin Peanut Co. v. Com'r, 4 Cir., 144 F.2d 979, 982; Louisville Provision Co. v. Com'r, 6 Cir., 155 F.2d 505, 509; Colonial Milling Co. v. Com'r, 6 Cir., 132 F.2d 505, 510; Cudahy Packing Co. v. United States, 7 Cir., 152 F.2d 831, 835."

■ "The majority do not think that whether the Tax Court shall accord probative force to the fact of loss can be said to be a question of law. It is a matter of weighing evidence, which is, of course, for the Tax Court. It is not for us to point out the processes by which the Tax Court should reach its conclusions of fact or to prescribe the factual weight it should give to any evidentiary matter. 'It is the function of the Board (now Court), not the Circuit Court of Appeals, to weigh the evidence, draw inferences from facts, and to choose between conflicting inferences.' Wilmington Trust Co. v. Helvering, 316 U.S. 164, 168, 62 S.Ct. 984, 86 L.Ed. 1352. To what extent taxes are shifted when goods are sold is a pure question of fact to be answered by the Tax Court in the light of the highly specialized knowledge with respect to tax matters that it is presumed to possess. For this Court to attempt to say what weight should be given particular evidence bearing on this matter would seem, in the opinion of the majority, to be directly in the teeth of the decisions in Dobson v. Com'r, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248, and Webre Steel Co. Ltd. v. Com'r, 324 U.S. 164, 173, 65 S.Ct. 578, 89 L.Ed. 819."

The judgment of the Tax Court will accordingly be

Affirmed.

SOPER, Circuit Judge (dissenting as to Mill 3).

It is of course obvious that the taxpayer was not enriched, unjustly or in any other sense, by the operation of Mill 3, for the mill was run at a loss during the tax period. It is contended, however, that the loss might have been greater if the taxpayer had not attempted to pass on the tax, and that any uncertainty must be resolved against the taxpayer since it has the burden of proof. The answer to this argument is that the loss itself, which is conceded, shows beyond all question that the taxpayer paid a part of the tax. It goes without saying that the taxpayer tried to pass on all of its costs, including the tax. Indeed it was obliged to do so if it desired to survive; but the economic conditions at the time were such that it failed in the attempt, and the amount of its loss measures the amount of the costs of production, including the tax, which it paid out of its own pocket. To ascertain how much of this loss consisted of the invalid tax it is only necessary to determine the ratio which the total loss bore to the total cost of production and to apply this ratio to the total tax.

No one has attempted to answer this line of reasoning or to show that it is unsound.

All that is said is that the taxpayer must show by some additional evidence to what extent each factor of cost contributed to the loss. In the nature of things no such evidence is available, for there is nothing to indicate that the taxpayer did not try to recover all of the costs of operation with the same persistency. In short, the taxpayer is asked to perform an impossible task, and that is not permissible under the doctrine of Anniston Mfg. Co. v. Davis, 301 U.S. 337, 351, 57 S.Ct. 816, 823, 81 L.Ed. 1143, where it was said: "When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled."

The Tax Court as the trier of fact does not possess the arbitrary power to reject a claim irrespective of the probative force of the evidence submitted. In this case the Tax Court has erroneously said in effect that the claimant has offered no evidence that it bore any part of the tax. This presents a question of law which under familiar practice the appellate court has the duty and power to review. With respect to Mill 3, the judgment below should be reversed and the case remanded for further proceedings.